In re CROTON RIVER CLUB, INC., Debtor.

CROTON RIVER CLUB, INC., individually and as a shareholder of the Half Moon Bay Homeowners Association, Inc. suing on behalf of itself and all other shareholders of the Half Moon Bay Homeowners Association, Inc. similarly situated and in the right of the Half Moon Bay Homeowners Association, Plaintiff,

v.

HALF MOON BAY HOMEOWNERS ASSOCIATION, INC., Steven Blust, David Cohen, Mable Fischella, Stanley Teller, Brian Trainor, Andre Schaffen, Ed Zafrewski and Federal Deposit Insurance Corporation, Defendants.

Bankruptcy No. 90 B 20215.

United States Bankruptcy Court, S.D. New York.

Sept. 24, 1992.

Kaye, Scholer, Fierman, Hays & Handler, New York City, for plaintiff.

Shea & Gould, New York City, for defendants.

Pryor, Cashman, Sherman & Flynn, New York City, for F.D.I.C.

DECISION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DISMISSAL AND PLAINTIFF'S CROSS–MOTION FOR PARTIAL SUMMARY JUDGMENT

HOWARD SCHWARTZBERG, Bankruptcy Judge.

The Chapter 11 debtor, Croton River Club, Inc., has brought this adversary proceeding individually, and as a shareholder of the Half Moon Bay Homeowners Association ("HOA"), to obtain a declaratory judgment that the amount allocated in the 1992 HOA budget to be paid by the debtor by virtue of its ownership of the Marina (the "Marina Allocation") is invalid as it is not supported by the pertinent facts and was improperly set by the homeowners-in-residence members ("Board Members") of the HOA Board of Directors ("HOA Board"). The debtor claims that the Board Members set the amount of the Marina Allocation to further their personal interest at the expense of the debtor which constitutes a breach of their fiduciary obligations to the debtor. The debtor also seeks a declaratory judgment fixing the amount of the Marina Allocation and damages for the defendants' activities relating to the Marina and Marina Allocation.

The HOA and the individual defendants (the "Movants"), excluding the Federal De-

posit Insurance Corporation ("FDIC"), have moved (a) for summary judgment pursuant to Federal Rule of Civil Procedure 56 as incorporated by Bankruptcy Rule 7056; (b) to dismiss the debtor's complaint to the extent it is brought on behalf of the shareholders of the HOA; and (c) granting defendant HOA judgment on its counterclaim. The Movants contend, among other things, that pursuant to New York law, the appropriate standard applicable to the decision of the HOA Board regarding the amount of the Marina Allocation is the business judgment rule.

The debtor has cross-moved for partial summary judgment. The debtor claims that the business judgment rule does not apply to the HOA Board's setting of the amount of the Marina Allocation and that there is a genuine issue as to a material fact, namely whether the HOA Board's decision setting the Marina Allocation was reasonable.

## BACKGROUND

On February 14, 1991, the debtor filed with this court a petition for reorganizational relief under Chapter 11 of the Bankruptcy Code and was continued in management and possession of its property and business in accordance with 11 U.S.C. §§ 1107 and 1108. As of the petition date, the debtor was the Sponsor of a mixed-use real estate development, known as "Half Moon Bay," located along the Hudson River in Croton-on-Hudson, New York. The Half Moon Bay project consists of a real estate development of residential units (the "Upland Parcel"), a marina (the "Marina") which has been developed with 162 marina slips and is operated as a commercial marina, and real estate designated for the construction of a restaurant (the "Restaurant Parcel").

The HOA is a New York, not-for-profit corporation in the business of owning and overseeing the common elements of the Half Moon Bay complex.

On May 21, 1992, the debtor commenced this adversary proceeding on behalf of itself and all other similarly situated shareholders of the HOA against the HOA, HOA Board, the Board Members, and the FDIC.

The individual defendant Board Members own and occupy condominium residence units at Half Moon Bay and are "homeowners-in-residence." From on or about August 7, 1991, the individual defendants have constituted all of the HOA Directors elected or designated by the homeowner-in-residence members of the HOA.

Pursuant to this court's order dated July 3, 1991, the debtor was authorized to sell all of its rights, title and interest in the Upland Parcel to HMB Acquisition Corporation ("Acquisition"). Neither the Marina nor the Restaurant Parcel were part of this sale, which was consummated on or about July 17, 1991. As a result of the sale, the Marina and the Restaurant Parcel are the debtor's last assets of significant value. The sale of the Marina is critical to the debtor's reorganization under Chapter 11.

The FDIC is the liquidator of Eliot Bank which holds a first mortgage on the Marina and the Restaurant Parcel in excess of $6.5 million.

Pursuant to the by-laws of the HOA, by reason of its ownership of the Marina, the debtor owns 162 Future Member Certificates in HOA and is entitled to exercise the rights and required to undertake the obligations allocable to the Marina members of the HOA.

On or about December 23, 1990, a homeowner's group comprised of residential unit owners of Half Moon Bay condominiums, known as the Half Moon Bay Homeowners' Group ("HOG"), commenced a derivative action in the Supreme Court of the State of New York against, among others, the debtor, HOA, individual members of the HOA Board, and the FDIC. HOG sought declaratory and injunctive relief and actual and punitive damages of $6 million for the debtor's alleged failure to comply with the Half Moon Bay offering plan and the HOA Board's alleged breach of its fiduciary duties to Half Moon Bay homeowners.

The state court lawsuit was settled by a stipulation dated July 3, 1991, which this court so ordered. One aspect of the stipulation provided that the debtor, as sponsor

of the Upland Parcel, would cede certain powers over the HOA to homeowners-in-residence, who are non-sponsor members of the HOA Board. Included in those powers ceded to the homeowners-in-residence as part of the stipulation was the power to set the HOA budget and determine the Marina allocation. The stipulation, as originally so ordered by this court, read, in part, as follows:

4. *HOA Board of Directors.* CRC and HMB hereby covenant and agree that from and after the Effective Date hereunder, no Sponsor appointee or designee to the HOA Board of Directors shall serve in the capacity of either HOA Board President or Vice President. Sponsor covenants and agrees that the budgets set by the HOA, and the allocations under the control of the HOA (*excluding the allocation of expenses to the Marina parcel*), shall be finally decided by a vote of the homeowners-in-residence members of the HOA Board.

*Stipulation and Settlement Agreement Between CRC, HMB and HOG,* at 9–10 (July 1, 1991).

The stipulation also reduced the number of parking spaces available to Marina slip renters to 81 and restricted the number and location of parking spaces available for the Restaurant Parcel. In addition, the debtor also agreed to rescind the rights of Marina slip renters to use the Half Moon Bay clubhouse and recreational facility known as Hudson House, except to use lavatory facilities and the Marina office.

In August 1991, HOG offered to buy the Marina from the debtor for $750,000.00. The debtor alleges that all or some of the individual defendants were members of HOG at the time of this offer. The debtor rejected HOG's offer to buy the Marina because it deemed the offer inadequate.

Additionally, David Cohen, an individual defendant and HOA Board member made several offers to purchase the Marina from the debtor or for the purchase of the note and mortgage encumbering the Marina from defendant FDIC. All of such offers had been rejected, terminated or withdrawn prior to the end of September 1991.

With regard to the complex's residential units, located on the Upland Parcel, by December 1989, title to 71 of the first 120 units had been conveyed to unit purchasers. The remaining 49 initial units were in various stages of construction. Following Acquisition's purchase of the Upland Parcel, an auction was held on September 29, 1991 to sell the remaining 49 units. The debtor alleges that title to substantially all of the remaining 49 units was transferred to homeowners-in-residence following the auction. The debtor alleges in its adversary complaint that some of the HOA Board members believed that Acquisition was not living up to its obligations under the stipulation and took action through the HOA to prevent Acquisition from closing sales of the 49 units. The debtor further alleges that such conduct adversely affected its creditors, specifically the Mechanics Lienors Group which were scheduled to receive at least $150,000.00 from Acquisition after the closings on the remaining 49 units took place. Additionally, the debtor claims that the HOA Board members' actions caused negative publicity which detrimentally affected the Marina operations and its ability to attract new slip renters for the 1992 season.

On or about October 11, 1991, counsel for the debtor sent a letter to counsel for HOA in which the debtor demanded that the HOA Board "promptly fix the reasonable Marina Allocation" for 1992. In November 1991, the Managing Agent for the HOA prepared the 1992 HOA budget, allocating approximately $19,000.00 for the Marina Allocation, which amount reflected the historical contribution of the Marina to the HOA budget. On or about December 19, 1991, HOA fixed the Marina Allocation at approximately $160,324.00. The debtor has not paid any part of the Marina Allocation.

During the calendar years 1991 and 1992, it is anticipated that the Marina has and will generate on an annual basis cash revenues of approximately $278,000.00 and pay cash expenses before debt service, real estate taxes and payments to the HOA on account of the Marina Allocation of $158,-

000.00. The resulting annual operating cash flow is approximately $120,000.00. *Affidavit of Susan Hanna,* Vice President of CRC, at 2. If the Marina Allocation which HOA has set at approximately $160,-000.00 remains, the Marina will operate at a cash deficit of approximately $40,000.00 before payment of debt service and real estate taxes.

On January 24, 1992, this court signed an order presented by the debtor which amended the stipulation between CRC, Acquisition and HOG. The order amending the stipulation substituted the word *"including"* for the word *"excluding,"* so that the homeowner-in-residence members of the HOA Board would also set the Marina Allocation. In its application accompanying the order amending the stipulation, the debtor states:

> 7. Shortly after the approval of the Stipulation, HOG pointed out to the debtor that there was an inadvertent language error in Section B.4 of the Stipulation, in that in the second sentence the word "including" should have appeared rather than "excluding." The Debtor agreed with HOG that this was a mutual mistake and committed to seek a corrective order from this Court if such was requested by HOG.

*Debtor's Application For An Order Amending Stipulation,* at 3 (January 3, 1992). The FDIC received notice of the amendment and did not object to the entry of the order amending the stipulation.

## DISCUSSION

### Summary Judgment

The HOA and the individual defendants have moved for summary judgment under Federal Rule of Civil Procedure 56, which is made applicable to this adversary by Bankruptcy Rule 7056. The debtor has cross-moved for partial summary judgment. In ruling on a motion for summary judgment, the court must review the pleadings, depositions, answers to interrogatories, admissions and affidavits, if any, to determine if there is no genuine issue as to any material fact so that the moving party is entitled to a judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986). The moving party has the burden of showing that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 599, 106 S.Ct. 1348, 1362, 89 L.Ed.2d 538 (1986). The nonmoving party may oppose a summary judgment motion by making a showing that there is a genuine issue as to a material fact in support of a verdict for that party. *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510.

### Review of HOA Board's Decision Setting Marina Allocation.

The essence of the complaint is that the HOA Board acted in an arbitrary, capricious, unfair and/or biased manner toward the debtor when the HOA Board fixed the Marina Allocation. The debtor alleges that the HOA Board breached its fiduciary obligation under state law and asks that the court to invalidate the Marina Allocation set by the HOA Board, set a new Marina Allocation, and award it compensatory, exemplary and punitive damages for alleged interference with the debtor's business.

In support of their motion for summary judgment, the Movants argue that the court may not consider whether the HOA Board's setting of the Marina Allocation at approximately $160,000.00 was unreasonable or unfair because the appropriate standard of review when inquiring into the decisions made by a board of directors of a New York State, not-for-profit corporation is the business judgment rule. The Movants contend that the business judgment rule bars judicial inquiry into a board's decision absent a showing that the board acted in bad faith, citing *Levandusky v. One Fifth Avenue Apartment Corp.,* 75 N.Y.2d 530, 554 N.Y.S.2d 807, 553 N.E.2d 1317 (1990). The debtor has cross-moved

for partial summary judgment arguing that the business judgment rule should not apply to the present case.

In *Levandusky*, a shareholder of a cooperative corporation sought to annul a stop work order issued by the board because the order prevented him from completing certain renovations on his apartment. The stop work order sought to enforce a board resolution that prohibited the relocation of steam risers. The resolution was applicable to all tenants in the building. The shareholder argued that the court should examine the "reasonableness" of the board's decision. The *Levandusky* court found that

> Developed in the context of commercial enterprises, the business judgment rule prohibits judicial inquiry into actions of corporate directors "taken in good faith and in the exercise of honest judgment in the lawful and legitimate furtherance of corporate purposes." (*Auerbach v. Bennett*, 47 N.Y.2d 619, 629, 419 N.Y.S.2d 920, 393 N.E.2d 994, *supra*.) So long as the corporation's directors have not breached their fiduciary obligation to the corporation, "the exercise of [their powers] for the common general interests of the corporation may not be questioned, although the results show that what they did was unwise or inexpedient." (*Pollitz v. Wabash R.R. Co.*, 207 N.Y. 113, 124, 100 N.E. 721.)

*Levandusky*, 75 N.Y.2d at 737–38, 554 N.Y.S.2d at 811, 553 N.E.2d at 1321. In this way, the business judgment rule protects a board from having each of its decisions indiscriminately attacked, thereby reducing the effectiveness of the board. In discussing the difference between the business judgment rule and the reasonableness test, the court stated:

> The difference between the reasonableness test and the rule we adopt is twofold. First—unlike the business judgment rule, which places on the owner seeking review the burden to demonstrate a breach of the board's fiduciary duty—reasonableness review requires the board to demonstrate that its decision was reasonable. Second, although in practice a certain amount of deference

appears to be accorded to board decisions, reasonableness review permits—indeed, in theory requires—the court itself to evaluate the merits or wisdom of the board's decision....

*Id.* at 75 N.Y.2d at 539, 554 N.Y.S.2d at 812, 553 N.E.2d at 1322 (citation omitted).

However, the *Levandusky* court held that the business judgment rule permits a court to review a board's decision

> when the challenger demonstrates that the board's action has no legitimate relationship to the welfare of the cooperative, *deliberately singles out individuals for harmful treatment*, is taken without notice or consideration of the relevant facts, *or* is beyond the scope of the board's authority.

*Id.* at 75 N.Y.2d at 540, 554 N.Y.S.2d at 813, 533 N.E.2d at 1323 (emphasis added). Thus, the exceptions to the business judgment rule are written in the disjunctive. The plaintiff in *Levandusky* failed to meet his burden of proving the applicability of one of the exceptions to the business judgment rule. Consequently, the court refused to examine the board's decision to "adhere to a uniform policy regarding the building's piping system."

█ The present case is distinguishable from *Levandusky*. The HOA Board decision in question in this case relates to the setting of one line item of the HOA budget, namely the Marina Allocation. This is not a situation where the HOA Board made a decision to be applied uniformly to all of its shareholders. The HOA Board has singled out the debtor, as the owner of the Marina, for harmful treatment. By increasing the Marina Allocation from approximately $19,000.00 to $160,000.00, after unsuccessfully attempting to purchase the Marina, the decision by the HOA Board can be interpreted in no other way. The Movants contend that the HOA Board's decision setting the Marina Allocation does not single out the debtor because the Marina, although owned by a single entity at present, was originally planned as "dockominiums" owned by separate individuals, and in any event the cost of the Marina Allocation is

passed along to the slip lessees who actually use the Marina. This argument is unpersuasive because at the time the HOA Board set the Marina Allocation, the debtor owned the Marina as a single entity. Moreover, the fact that the debtor may pass along the cost of the increase in the Marina Allocation to the slip lessees is irrelevant. What the singled-out party chooses to do with regard to a board's decision does not mean that the party is any less singled-out.

■ Where the business judgment rule is not to be employed as the standard for reviewing a decision of a not-for-profit corporate board either because one of the exceptions to the business judgment rule set forth in *Levandusky* applies, or for another reason, the court must apply the reasonableness test. *See, e.g., Ludwig v. 25 Plaza Tenants Corp.*, 584 N.Y.S.2d 907, 908 (1992) (court applied reasonableness test after determining that business judgment rule was inapplicable because board decision clearly violated the express terms of proprietary lease). In *Smukler v. 12 Lofts Realty, Inc.*, 178 A.D.2d 125, 576 N.Y.S.2d 862 (1991), the court held that the insulation that the business judgment rule provides board members "does not preclude judicial review of a board's exercise of discretion where it is claimed that the board ... *deliberately singled* plaintiff out for disparate treatment...." *Id.* at 863 (emphasis added).

■ The applicability of one of the exceptions to the business judgment rule set forth in the *Levandusky* case, that the debtor was singled-out for harmful treatment by the HOA Board, requires this court to deny the Movants' motion for summary judgment and grant the debtor's cross-motion for partial summary judgment because the reasonableness standard rather than the business judgment rule applies to the HOA Board's decision. Accordingly, this court must determine whether the HOA Board's decision setting the Marina Allocation was reasonable, a question raising an issue of fact which necessitates an evidentiary hearing.

*Movants' Motion to Dismiss*

In addition to moving for summary judgment, the Movants have also sought dismissal of the adversary complaint pursuant to Federal Rule of Civil Procedure 12(b), as made applicable to bankruptcy cases by Federal Rule of Bankruptcy Procedure 7012(b). In ruling on a motion to dismiss, a court "should not dismiss the complaint for failure to state a claim 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Ricciuti v. N.Y.C. Transit Authority*, 941 F.2d 119, 123 (2d Cir.1991) (citing *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

The Movants seek dismissal of two aspects of the debtor's complaint, both on the ground that the debtor has failed to state a cause of action. First, the Movants seek dismissal of the complaint's third cause of action in which the debtor alleges interference with its ability to "attract users and buyers for the Marina." The Movants argue that claims of interference with advantageous business relations require proof that the defendant's sole motive was to inflict injury and that unlawful means were employed to achieve that end. The Movants further assert that the debtor itself alleges in the complaint that the HOA Board was motivated by self-interest in setting the Marina Allocation. The Movants contend that where an alleged interferer acts in her own economic interest, there is no interference, citing *Nifty Foods Corp. v. Great Atlantic & Pacific Tea Co., Inc.*, 614 F.2d 832, 838 (2d Cir.1980).

■ The parties have used various formulations to describe the debtor's common law claim such as tortious interference with prospective economic advantage or prospective business advantage. Regardless of the label employed, the elements of the cause of action are the same. *Martin Ice Cream Co. v. Chipwich, Inc.*, 554 F.Supp. 933, 945 (S.D.N.Y.1983). To state a claim for tortious interference with prospective economic advantage,

a plaintiff must show "the defendant's interference with business relations ex-

isting between the plaintiff and a third party, *either* with the sole purpose of harming the plaintiff *or* by means that are dishonest, unfair or in any other way improper.... If the defendant's interference is intended, at least in part, to advance its own competing interests, the claim will fail unless the means employed include criminal or fraudulent conduct." *National Westminster Bank, U.S.A. v. Ross,* 130 B.R. 656 (S.D.N.Y.1991) (quoting *PPX Enterprises, Inc. v. Audio Fidelity Enterprises, Inc.,* 818 F.2d 266, 269 (2d Cir.1987) (citations omitted) (emphasis in original)), *affirmed,* 962 F.2d 1 (2d Cir. 1992). Moreover, a plaintiff alleging tortious interference with prospective economic advantage must also allege the breach of an existing or potential contract with an identifiable third party, which causes damages. *See Nifty Foods,* 614 F.2d at 837; *National Westminster,* 130 B.R. at 678. A potential contract may be found "if the plaintiff had a 'reasonable expectancy of a contract' with the third party, which can result from 'mere negotiations.'" *Strapex Corp. v. Metaverpa N.V.,* 607 F.Supp. 1047, 1050 (S.D.N.Y.1985) (quoting *Morse v. Swank, Inc.,* 459 F.Supp. 660, 667 (S.D.N.Y.1978)).

■ In the present case, the debtor's claim for tortious interference fails because the debtor's complaint neither identifies a third party with which it had a contract or reasonable expectancy of a contract, nor does it allege a party with which it was negotiating. Accordingly, the debtor's third cause of action for tortious interference is dismissed.

■ Second, the Movants seek dismissal of the complaint in its entirety to the extent that the complaint is brought on behalf of the shareholders of the HOA. The Movants assert that the complaint fails to plead any basis for the debtor's derivative claim. The Movants argue that dismissal of the derivative portion of the suit is warranted because the debtor's complaint does not specify how the alleged wrong, the high amount of the Marina Allocation set by the HOA Board, would cause the HOA, the corporate defendant, any damage.

The debtor contends that all of the stockholders have suffered harm in addition to that suffered by the debtor individually. The debtor reasons that the individual defendants, as HOA Board members, knew that when they set the Marina Allocation at such an unreasonably high level, the debtor would not be able to pay it and would have to institute this adversary proceeding. The debtor further argues that in order to provide for the likelihood that the debtor would not pay the Marina Allocation, the HOA Board assessed higher amounts to each of the shareholders on a temporary basis.

The fact that the HOA may temporarily increase the shareholders' contributions to the HOA budget because of the debtor's failure to contribute the Marina Allocation is not a sufficient injury to support a derivative action. The debtor has it within its own power to ameliorate this harm by tendering payment of the Marina Allocation. The harm is self-manufactured and therefore does not support a derivative action on behalf of shareholders for the debtor's own non-payment.

■ In addition, that portion of the debtor's complaint brought on behalf of the shareholders of the HOA is dismissed pursuant to Federal Rule of Civil Procedure 23.1 because the debtor does not fairly and adequately represent the interests of the shareholders similarly situated in enforcing the right of the corporation or association. This court notes that there appears to be a difference of opinion as to whether the plaintiff or the defendant has the burden of proof on the issue of fair and adequate representation. *Compare Petersen v. Federated Development Co.,* 416 F.Supp. 466, 475 n. 6 (S.D.N.Y.1976) (court assumed that action brought on behalf of debtor in its individual capacity only because plaintiff made no showing that it could fairly and adequately represent interests of shareholders) *with Lewis v. Curtis,* 671 F.2d 779, 788 (3d Cir.1982) (burden on defendant to demonstrate representation inadequate). Nevertheless, it is clear that the plaintiff must not have an interest "antagonistic to the class." *Lewis,* 671 F.2d at 788 (citing

other cases). In the present case, the debtor has an interest antagonistic to the other members of the class because the other shareholders will have to pay increased amounts if the debtor prevails in this adversary proceeding. Accordingly, to the extent that the debtor brings this action derivatively, the complaint is dismissed and the debtor will proceed as the plaintiff in its individual capacity.

### HOA's Counterclaim

HOA has counterclaimed in its answer for payment of the Marina Allocation, which the HOA Board set at $160,324.00. Payment of the Marina Allocation is premature at this time because the court must decide whether the HOA Board acted reasonably in setting the Marina Allocation. Accordingly, the request for judgment on the counterclaim is denied.

### Core Proceeding

■ Because the instant proceeding involves a state law issue relating to a contract, the stipulation and amended stipulation settling the state court action brought by HOG, entered into in the post-petition period, applicable law in the Second Circuit renders this post-petition dispute uniquely a 28 U.S.C. § 157(b)(2)(A) core proceeding in the administration of this case. *In re Ben Cooper, Inc.*, 896 F.2d 1394, 1400 (2d Cir.1990), *vacated and remanded,* — U.S. ——, 111 S.Ct. 425, 112 L.Ed.2d 408 (1990), *superseded,* 924 F.2d 36 (2d Cir.), *cert. denied,* — U.S. ——, 111 S.Ct. 2041, 114 L.Ed.2d 126 (1991).

### CONCLUSIONS OF LAW

1. This court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a). This is a core proceeding in accordance with 28 U.S.C. § 157(b)(2)(A).

2. The Movants' motion for summary judgment is denied.

3. The plaintiff's cross-motion for partial summary judgment is granted.

4. The Movants' motion to dismiss the plaintiff's third cause of action for tortious interference is granted.

5. The Movants' motion to dismiss the entire complaint to the extent that the plaintiff has brought the action on behalf of the shareholders of the HOA is granted.

6. The Movants' motion for judgment on its counterclaim is denied as premature. SETTLE ORDER ON NOTICE.