OPINION OF THE COURT
David B. Saxe, J.
May a nonpurchasing tenant[1] in a building that has been converted to co-operative ownership through a noneviction plan[2] be evicted for refusing to provide the owner of the shares allocable to the apartment with a duplicate key to his apartment (to be held by the building’s superintendent for emergency use only) in violation of section 51-c of the Multiple Dwelling Law of New York, when, while at the same time, co-op owners in the building are not similarly required to turn over duplicate keys to the superintendent?
*51 Mr. and Mrs. William T. Romaine are tenants of apartment 11-F at 415 East 52nd Street, New York, New York, in the exclusive section of New York City known as Sutton Place. A few years ago, their building underwent a conversion to co-operative ownership as part of a noneviction plan. They chose not to purchase and opted to remain there as rent-stabilized tenants. The shares of stock allocable to their apartment are owned by the petitioner. The petitioner has requested that a duplicate key be furnished to it so that the superintendent may have access in case of an emergency.
The respondent objects and has refused to furnish the petitioner with a duplicate key. He contends that there are security problems in the building; that, in fact, there have been various “break-ins”, and that the action by the petitioner in demanding a key from him is part of a course of conduct designed to harass nonpurchasing tenants.
While the co-op’s board of directors has made the furnishing of duplicate keys optional on the part of co-op owners, the rule is otherwise for rent-stabilized nonpurchasing tenants. Both the law applicable to rent-stabilized tenants and the respondent’s lease make this act mandatory.
Section 51-c of the Multiple Dwelling Law provides: “Every tenant of a multiple dwelling * * * shall have the right to install and maintain * * * in the entrance door of his particular housing unit in such multiple dwelling, a lock, separate and apart from any lock installed and maintained by the owner of such multiple dwelling, not more than three inches in circumference, as an ordinary incident to his tenancy, provided that a duplicate key to such lock shall be supplied to the landlord or his agent upon his request”.
The petitioner commenced this holdover proceeding on the grounds of failure to supply access in violation of the lease and subdivision E of section 53 of the Code of the Rent Stabilization Association of New York City, Inc. (Code) and failure to supply a duplicate key in violation of the lease and section 51-c of the Multiple Dwelling Law.
The respondent’s principal defense is that since the co-op board has not required owners to furnish copies of their *52 keys, the imposition of such a rule upon nonpurchasing tenants is unreasonable and unenforceable. The petitioner argues that a tenant residing in a building that has undergone co-operative conversion may only enjoy the protections afforded by the Rent Stabilization Law and Code or the Rent Control Law, as the case may be. Here, the Rent Stabilization Law and Code apply. So, the petitioner argues, the respondent must comply with the provisions of the Code mandating access (§ 53, subd E) and the furnishing of duplicate keys (Multiple Dwelling Law, § 51-c).
Certainly, if the co-op board passed a resolution requiring certain actions or duties by the shareholders to furnish duplicate keys the shareholders would be bound as this would be a reasonable regulation. (See Garrison Apts, v Sabourin, 113 Misc 2d 674.)
Initially it appears inconsistent to require the respondent to turn over duplicate keys when the shareholder-tenants are not subject to the same requirement. Upon closer scrutiny while both rent-stabilized tenants and owners may reside side by side in the same building, their respective rights of possession stem from distinct sources. The owner-tenants enjoy their rights as a by-product of their purchase of the co-operative shares. They benefit by and are simultaneously bound by reasonable regulations enacted by the co-operative board governing the occupancy of the premises. {Supra.)
Nonpurchasing tenants (here rent-stabilized tenants), derive their rights from a totally distinct source. They are not bound by the regulations of the co-op board. Instead, they are subject to the obligations mandated by the Rent Stabilization Law. The respondent’s position that rent-stabilized tenants and shareholder-tenants must enjoy the identical rights and privileges is unsupportable. Indeed, there are many benefits (such as the right to a renewal lease under section 60 of the Code) which the respondent enjoys solely as a result of the protection of the rent stabilization laws that shareholder-tenants do not. Just as he enjoys these privileges, he may not refuse to abide by certain mandates imposed upon him by the rent stabilization laws.
*53 Section 51-c of the Multiple Dwelling Law permits a tenant to install his own locks but simultaneously requires the furnishing of a duplicate key to the landlord upon request. This is a valid law and the respondent is bound by it. Further, the obligation of a tenant to provide a landlord with duplicate keys to locks installed by the tenant constitutes a substantial obligation of the tenancy. (Lavanant v Lovelace, 71 Misc 2d 974, affd 41 AD2d 905.) The fact that the co-operative board has made the furnishing of duplicate keys by the shareholders discretionary does not alter the validity of section 51-c of the Multiple Dwelling Law. Nor do I find any support for the respondent’s proposition that this inconsistency is prejudicial to the respondent or a product of a plan of harassment. Rather I find that the petitioner’s request for the respondent to turn over the keys was legitimate and made in good faith.
After trial, I find that the tenant’s failure to deliver a duplicate set of keys to the petitioner was in violation of both his lease and the applicable law. Since I find that the petitioner has failed to prove the second ground, i.e., the failure to grant access, this decision rests solely upon the tenant’s violation of section 51-c of the Multiple Dwelling Law and the provision of the lease relating to the tenant’s obligation to furnish the landlord with duplicate keys for locks he has installed.
On that basis I hold for the petitioner. Final judgment for petitioner: 10-day stay.

. General Business Law, § 352-eeee, subd 1, par (e): “(e) ‘Non-purchasing tenant’. A person who has not purchased under the plan and who is a tenant entitled to possession at the time the plan is declared effective or a person to whom a dwelling unit is rented subsequent to the effective date. A person who sublets a dwelling unit from a purchaser under the plan shall not be deemed a non-purchasing tenant.”

. General Business Law, § 352-eeee, subd 1, par (b): “(b) ‘Non-eviction plan’. A plan which may not be declared effective until written purchase agreements have been executed and delivered for at least fifteen percent of all dwelling units in the building or group of buildings or development by bona fide tenants in occupancy or bona fide purchasers who represent that they intend that they or one or more members of their immediate family intend to occupy the unit when it becomes vacant. As to tenants who were in occupancy on the date a letter was issued by the attorney general accepting the plan for filing, the purchase agreement shall be executed and delivered pursuant to an offering made in good faith without fraud and discriminatory repurchase agreements or other discriminatory inducements.”