*1015 OPINION OF THE COURT
Eileen Bransten, J.
Petitioner, 111 Tenants Corp. (hereinafter Petitioner), a cooperative housing corporation, commenced this summary holdover proceeding against one of its tenant-shareholders, Linda Stromberg (hereinafter Respondent) after Petitioner terminated her tenancy pursuant to a conditional limitation found in paragraph 31 of the proprietary lease. Specifically, Petitioner asserts that Respondent is in default of a covenant to surrender a duplicate key to the entrance door of her apartment as required under paragraph 25 of the proprietary lease.
Petitioner’s cross motion for summary judgment is granted. The clear language contained in paragraph 25 of the proprietary lease requires Respondent to immediately give Petitioner a duplicate key after installing a new lock to her apartment door. Paragraph 25 provides, in pertinent part, that: "The Lessor and its agents and their authorized workmen shall be permitted to visit, examine, or enter the apartment * * * at any reasonable hour of the day upon notice, or at any time and without notice in case of emergency, to make or facilitate repairs in any part of the building or to cure any default by the Lessee and to remove such portions of the walls, floors and ceilings of the apartment * * * as may be required for any and all purpose * * * In order that the Lessor shall at all times have access to the apartment * * * for the purposes provided for in this lease, the Lessee shall provide the Lessor with a key to each lock providing access to the apartment * * * and if any lock shall be altered or new lock installed, the Lessee shall provide the Lessor with a key thereto immediately upon installation.”
Paragraph 31 (e) of the proprietary lease gives Petitioner the right to terminate Respondent’s tenancy upon 30-day written notice of the default in the performance of any covenant.[1]
Respondent admits changing the lock to her apartment on or about April 1995. The parties agree that Respondent purposefully refused to provide Petitioner with a key to the new lock unless Petitioner accepted the key with certain restrictions. In fact, Respondent continues to insist that because of her concerns for safety and privacy, Petitioner *1016 should: (1) accept a duplicate key in a "Keysure”,[2] (2) provide Respondent with additional written assurances that the duplicate key would only be used in emergencies, and (3) assure Respondent that no additional copies of the key would be made.
Respondent, however, provides no evidentiary proof to substantiate her allegations that Petitioner or Petitioner’s agents would negligently safeguard or improperly utilize the key to her apartment in contravention of the terms of the proprietary lease.
Respondent’s concerns for her safety and security have not been lightly disregarded. On the contrary, the express terms of paragraph 25 of the proprietary lease impose express limitations upon Petitioner’s use of the duplicate key and the laws of trespass and negligence provide Respondent with additional remedies in the event Petitioner fails to reasonably safeguard or use the key.
In Levandusky v One Fifth Ave. Apt. Corp. (75 NY2d 530 [1990]), the New York State Court of Appeals held that a standard of review analogous to the business judgment rule must be applied in determining challenges to decisions made by the board of directors of a cooperative corporation. In so holding, the Court noted that "the cooperative * * * is a quasi-government — 'a little democratic sub society of necessity.’ ” (Levandusky v One Fifth Ave. Apt. Corp., supra, 75 NY2d, at 536 [citation omitted].) In Levandusky, the Court aptly reasoned that: the chosen standard of review should not undermine the purposes for which the residential community and its governing structure were formed: protection of the interest of the entire community of residents in an environment managed by the board for the common benefit. (Levandusky v One Fifth Ave. Apt. Corp., supra, 75 NY2d, at 537.)
Accordingly, the Court concluded that "[s]o long as the board acts for the purposes of the cooperative, within the scope of its authority and in good faith, courts [should] not substitute their judgment for the board’s.” (Levandusky v One Fifth Ave. Apt. Corp., supra, 75 NY2d, at 538.)[3]
Aside from some conclusory, unsupported and self-serving conjecture, Respondent herein has failed to raise any triable is *1017 sues in regard to the existence of any bad faith as motivating Petitioner into enforcement of the key provision of the proprietary lease. On the contrary, Petitioner has established that its decision to enforce the key provision and to terminate Respondent’s tenancy has a "legitimate relationship to the welfare of the cooperative.” (Levandusky v One Fifth Ave. Apt. Corp., supra, 75 NY2d, at 540.) Indeed, a clearly articulated and rational purpose behind the duplicate key requirement is to protect the property in an emergency and to facilitate repairs to the premises for the benefit of the cooperative and all of its shareholders.
Likewise, Respondent has failed to show that there has been any retaliatory or selective enforcement of the key provision. There is no evidence presented to refute Petitioner’s affirmation that enforcement of the key provision against any other tenant-shareholder had never before been sought only because all the other tenant-shareholders have provided Petitioner access to their apartments and have always remained in compliance with the key provision. Moreover, the record reveals that Petitioner gave Respondent numerous opportunities to surrender the duplicate key before resorting to legal process.
In an attempt to thwart Petitioner’s ability to enforce strict compliance with the duplicate key provision in the proprietary lease, Respondent maintains that her failure to unconditionally surrender a duplicate key does not constitute a breach of a substantial obligation of her tenancy. Respondent insists that her refusal is, at worst, a technical breach of the proprietary lease and should not result in the forfeiture of her size-able investment and home.
Respondent correctly notes that statutory protections available to rent control and rent-stabilized tenants prohibit forfeiture of leasehold interests unless "the tenant is violating a substantial obligation of his tenancy”. (See, Administrative Code of City of NY § 26-408 [a] [1]; NY City Rent and Eviction Regulations [9 NYCRR] § 2104.2; Rent Stabilization Code [9 NYCRR] § 2524.1; see, e.g., Park W. Vil. v Lewis, 62 NY2d 431 [1984].) Indeed, recognizing that a proprietary lease is, in many *1018 respects, no different from any other type of lease and that the relationship between a tenant-shareholder and a cooperative corporation is akin to that of landlord and tenant, some courts have applied the "substantial obligation” analysis in determining the enforceability of proprietary lease terms and house rules by cooperative boards.
In 333-335 E. 209th St. HDFC v McDonnell (134 Misc 2d 1022 [Civ Ct, Bronx County 1987]), the court refused to award a possessory judgment against a tenant-shareholder notwithstanding the fact that the tenant-shareholder was violating a cooperative house rule which prohibited the harboring of dogs. The court opined that absent a clear statement in the lease that a particular covenant is a substantial obligation, courts should not permit a forfeiture of a lease. In the same manner, in 930 Fifth Corp. v King (71 Misc 2d 359 [App Term, 1st Dept] [Markowitz, J., dissenting], revd 40 AD2d 140 [1st Dept 1972]), the Appellate Term held that: "[w]here the parties to a lease expressly agree in writing that a certain breach (such as the harboring of a dog) will constitute a substantial violation, that agreement may be given effect * * * unless there is clear evidence that the parties, in fact, do not deem it substantial * * * There is no such express provision in the instant lease, nor any proof that the parties otherwise agreed that the violation in issue was to be deemed a violation of a substantial obligation of the tenancy.” (930 Fifth Corp. v King, 71 Misc 2d, at 362, supra.)
On appeal, the Appellate Division reversed the ruling of the Appellate Term but did not take issue with the substantial obligation analysis applied by the Appellate Term. Instead, the Appellate Division held that a possessory judgment should have been granted because "[respondent's conduct * * * indicated a belief that the provision [against harboring a dog] represented a substantial obligation of the tenancy.” (930 Fifth Ave. Corp. v King, 40 AD2d, at 142, supra.)
Although the Appellate Division in King (supra) reached the same result suggested by the Appellate Term in the dissenting opinion of Justice Jacob Markowitz, the Court failed to comment on the analysis therein which favored a business judgment approach as applied nearly 20 years later in Levandusky (supra). In his dissent, Justice Markowitz wrote: "Once again we confront a situation where a landlord seeks to abort a lease for breach by the tenant and the majority finds breach but, from an equitable point of view, considers it not so serious as to call for the eviction of the tenant * * * All the more should *1019 such rules be enforced where the apartment is a cooperative building. Occupancy agreements and proprietary leases include elements of self-determination not found in leases for apartments in privately owned buildings. In a cooperative building policy is set by the tenants themselves through a board of directors elected by them. As a member of such self-governing community of tenants, there is less justification for a tenant violating the rules than in the case of a tenant in a privately owned building.” (71 Misc 2d, at 363, supra.)
This court favors Justice Markowitz’s approach because it gives effect to the parties’ freedom to contract and is appropriately deferential to the decision of cooperative boards seeking enforcement of lease terms and house rules as is required by the New York State Court of Appeals decision in Levandusky (supra). Such an approach does not require a finding that a specific proprietary lease provision or house rule is a substantial obligation of the lease. Indeed, the important equitable considerations which mitigate against forfeiture are addressed by providing the tenant with a final stay period in which to effect a cure in the event the court finds that the lease provision or house rule was in fact breached.
Application of a substantial obligation analysis to the facts in this matter, however, would not result in an outcome different than under a business judgment analysis. In Lavanant v Lovelace (71 Misc 2d 974 [App Term, 1st Dept 1972], affd 41 AD2d 905 [1st Dept 1973]), the Appellate Term ruled that Multiple Dwelling Law § 51-c,[4] together with explicit provisions in a lease, "collaboratively raise to the proportions of a substantial obligation of the tenancy, tenant’s duty to deliver to landlord, on demand, a duplicate key to the farmer’s privately-installed lock on the entrance door to his apartment.” (Lavanant v Lovelace, supra, 71 Misc 2d, at 974.)
Similarly, in 415 E. 52nd St. Assocs. v Romaine (121 Misc 2d 50 [Civ Ct, NY County 1983]), the court held that a holdover proceeding for failure to surrender a duplicate key under the lease and under Multiple Dwelling Law § 51-c could be maintained against a rent-stabilized tenant residing in a cooperative building under a noneviction plan despite the fact that *1020 the cooperative rules and regulations did not require the purchasing tenants in the same building to provide keys to their apartments. In dicta, Judge David B. Saxe declared: "[c]ertainly, if the co-op board passed a resolution requiring certain actions or duties by the shareholders to furnish keys the shareholders would be bound as this would be reasonable regulation.” (415 E. 52nd St. Assocs. v Romaine, 121 Misc 2d, at 52, supra.)
Respondent attempts to distinguish Lavanant v Lovelace (supra), on the basis that it involves a statutory tenant and that equitable considerations should weigh more heavily against a forfeiture of a proprietary lease because of the substantial money Respondent invested to purchase the rights under the proprietary lease. Even if this court had the equitable jurisdiction to rescind or rewrite the terms of the proprietary lease so as to excuse Respondent from the express compliance required under the plain meaning of the terms therein, the court would not find Respondent’s equitable considerations compelling. As aptly stated by now Chief Judge of the New York State Court of Appeals, the Honorable Judith Kaye, in Levandusky: "[Agreement to submit to the decisionmaking authority of a cooperative board is voluntary in a sense that submission to government authority is not; there is always the freedom not to purchase the apartment. The stability offered by community control, through a board, has its own economic and social benefits, and purchase of a cooperative apartment represents a voluntary choice to cede certain of the privileges of single ownership to a governing body * * * As one court observed: 'Every man may justly consider his home his castle and himself as the king thereof; nonetheless his sovereign fiat to use his property as he pleases must yield, at least in degree, where ownership is in common or cooperation with others. The benefits of condominium living and ownership demand no less.’ ” (Levandusky v One Fifth Ave. Apt. Corp., supra, 75 NY2d, at 536-537 [quoting Sterling Vil. Condominium v Breitenbach, 251 So 2d 685, 688, n 6 (Fla Dist Ct App 1971)].)
Comparing the disparity in bargaining position between a traditional tenant and his or her landlord, to the superior bargaining position of a proprietary lessee and his or her landlord (the cooperative corporation), it can be better argued that in the face of a willful breach of lease, the equities against forfeiture would weigh more heavily against forfeiture of a statutory tenancy than a proprietary leasehold. Indeed, a voluntary decision by the proprietary lessee to submit to the *1021 benefits and obligations of cooperative living is assured by the initial significant cost of ownership. This is in contrast to the traditional tenant, who often, by virtue of his or her economic constraints, has less choice than to submit to the terms of a lease.
Accordingly, this court finds no basis upon which to distinguish the binding authority of the Lavanant decision (supra) or to deviate from the reasoning adopted in Romaine (supra). Although both the Lavanant and Romaine decisions rely on Multiple Dwelling Law § 51-c in addition to express lease terms to enforce a tenant’s obligation to surrender a duplicate key, the verified petition in the within matter discloses that the subject premises is a multiple dwelling and nothing in the Multiple Dwelling Law exempts tenant-shareholders from its requirements.
Moreover, that the duplicate key provision in paragraph 25 of the proprietary lease is a substantial obligation of the tenancy is manifest in the express terms of the lease itself. As previously noted, the duplicate key provision contains express terms which clearly articulate a vital purpose behind the requirement, to wit, to protect the property in an emergency and to facilitate repairs to the premises for the benefit of the cooperative and all of its shareholders. In addition, paragraph 25 places the impetus upon the tenant-shareholder to "immediately” surrender a duplicate key upon changing a lock. The use of the word "immediately” is an objective manifestation of Petitioner’s urgent intent to retain keys to each and every apartment during the course of the tenancy.
Although paragraph 25 provides Petitioner with the right to forcibly enter an apartment if an emergency arises and a tenant-shareholder failed to surrender a duplicate key to a changed lock, such a remedy is not exclusive and does not conflict with Petitioner’s right to enforce the mandatory covenant to surrender the key pursuant to the conditional limitation found in paragraph 31 of the lease. Such a construction is reasonable in that Petitioner, given respondent’s covenant to provide access, should not be compelled to resort to forcible entry and the potential for property damage and liability attendant with such entry.
Accordingly, Respondent’s wilful failure to surrender a duplicate key, without conditions, as is required by the clear terms of the proprietary lease constitutes a violation of a substantial obligation of her tenancy.
Based on the foregoing, Petitioner’s cross motion for summary judgment is granted. Petitioner is awarded a judgment of *1022 possession with the issuance of the warrant stayed 10 days from service upon Respondent’s newly retained counsel with a copy of this decision and order with notice of entry. Issuance of the warrant shall be permanently stayed in the event Respondent provides Petitioner with a duplicate key to her newly installed lock within the 10-day stay period. Upon Petitioner’s affidavit of noncompliance, together with proof of service of a copy of the within decision and order with notice of entry upon Respondent’s counsel, the clerk is directed to issue the warrant.

. It is undisputed that Petitioner served Respondent with a timely and effective notice to cure and a notice of termination prior to the commencement of this proceeding in accordance with this lease provision.

. A "Keysu,re” is a trademark name for a device described by its manufacturer as a "pilfer proof plastic container for storing keys that are given to another person [which] makes it possible to identify unauthorized or illegal use of keys”.

. See, Hoffman v 345 E. 73rd St. Owners Corp., 186 AD2d 507, 509 (1992) ("Having chosen the cooperative form of ownership [a tenant-shareholder] is *1017 bound to abide by the rules and regulations governing its operation”); Cannon Point N. v Abeles, 160 Misc 2d 30 (App Term, 1st Dept 1993) (business judgment analysis applied to uphold enforceability of a cooperative house rule prohibiting the installation of washers and dryers); Garrison Apts. v Sabourin, 113 Misc 2d 674 (Civ Ct, NY County 1982) (business judgment analysis applied to uphold enforceability of a cooperative resolution providing for the payment of a housing safety patrol by fee or by personal service on patrol).

. Multiple Dwelling Law § 51-c provides, in pertinent part, that: "Every tenant of a multiple dwelling * * * shall have the right to install and maintain * * * in the entrance door of his particular housing unit * * * a lock, separate and apart from any lock installed and maintained by the owner * * * provided that a duplicate key to such lock shall be supplied to the landlord or his agent upon his request.”