*533 OPINION OF THE COURT
Kaye, J.
This appeal by a residential cooperative corporation concerning apartment renovations by one of its proprietary lessees, factually centers on a two-inch steam riser and three air conditioners, but fundamentally presents the legal question of what standard of review should apply when a board of directors of a cooperative corporation seeks to enforce a matter of building policy against a tenant-shareholder. We conclude that the business judgment rule furnishes the correct standard of review.
In the main, the parties agree that the operative events transpired as follows. In 1987, respondent (Ronald Levandusky) decided to enlarge the kitchen area of his apartment at One Fifth Avenue in New York City. According to Levandusky, some time after reaching that decision, and while he was president of the cooperative’s board of directors, he told Elliot Glass, the architect retained by the corporation, that he intended to realign or "jog” a steam riser in the kitchen area, and Glass orally approved the alteration. According to Glass, however, the conversation was a general one; Levandusky never specifically told him that he intended to move any particular pipe, and Glass never gave him approval to do so. In any event, Levandusky’s proprietary lease provided that no "alteration of or addition to the water, gas or steam risers or pipes” could be made without appellant’s prior written consent.
Levandusky had his architect prepare plans for the renovation, which were approved by Glass and submitted for approval to the board of directors. Although the plans show details of a number of other proposed structural modifications, *534 including changes in plumbing risers, no change in the steam riser is shown or discussed anywhere in the plans.
The board approved Levandusky’s plans at a meeting held March 14, 1988, and the next day he executed an "Alteration Agreement” with appellant, which incorporated "Renovation Guidelines” that had originally been drafted, in large part, by Levandusky himself. These guidelines, like the proprietary lease, specified that advance written approval was required for any renovation affecting the building’s heating system. Board consideration of the plans — appropriately detailed to indicate all structural changes — was to follow their submission to the corporation’s architect, and the board reserved the power to disapprove any plans, even those that had received the architect’s approval.
In late spring 1988, the building’s managing agent learned from Levandusky that he intended to move the steam riser in his apartment, and so informed the board. Both Levandusky and the board contacted John Flynn, an engineer who had served as consulting agent for the board. In a letter and in a subsequent presentation at a June 13 board meeting, Flynn opined that relocating steam risers was technically feasible and, if carefully done, would not necessarily cause any problem. However, he also advised that any change in an established old piping system risked causing difficulties ("gremlins”). In Flynn’s view, such alterations were to be avoided whenever possible.
At the June 13 meeting, which Levandusky attended, the board enacted a resolution to "reaffirm the policy — no relocation of risers.” At a June 23 meeting, the board voted to deny Levandusky a variance to move his riser, and to modify its previous approval of his renovation plans, conditioning approval upon an acceptable redesign of the kitchen area.
Levandusky nonetheless hired a contractor, who severed and jogged the kitchen steam riser. In August 1988, when the board learned of this, it issued a "stop work” order, pursuant to the "Renovation Guidelines.” Levandusky then commenced this article 78 proceeding, seeking to have the stop work order set aside. The corporation cross-petitioned for an order compelling Levandusky to return the riser to its original position. The board also sought an order compelling him to remove certain air-conditioning units he had installed, which allegedly were not in conformity with the requirements of the Landmarks Preservation Commission.
*535 Supreme Court initially granted Levandusky’s petition, and annulled the stop work order, on the ground that there was no evidence that the jogged pipe had caused any damage, but on the contrary, the building engineer had inspected it and believed it would likely not have any adverse effect. Therefore, balancing the hardship to Levandusky in redoing the already completed renovations against the harm to the building, the court determined that the board’s decision to stop the renovations was arbitrary and capricious, and should be annulled. Both counterclaims were dismissed, the court ruling that the corporation had no standing to complain of violations of the Landmarks Preservation Law, particularly as the building had not been cited for any violation.
On reargument, however, Supreme Court withdrew its decision, dismissed Levandusky’s petition, and ordered him to restore the riser to its original position and submit redrawn plans to the board, on the ground that the court was precluded by the business judgment rule from reviewing the board’s determination. The court adhered to its original ruling with respect to the branch of the cross motion concerning the air conditioners, notwithstanding that the Landmarks Preservation Commission had in the interim cited them as violations.
On Levandusky’s appeal, the Appellate Division modified the judgment. The court was unanimous in affirming the Supreme Court’s disposition of the air conditioner claim, but divided concerning the stop work order. A majority of the court agreed with Supreme Court’s original decision, while two Justices dissented on the ground that the board’s action was within the scope of its business judgment and hence not subject to judicial review. Concluding that the business judgment rule applies to the decisions of cooperative governing associations enforcing building policy, and that the action taken by the board in this case falls within the purview of the rule, we now modify the order of the Appellate Division.
At the outset, we agree with the Appellate Division that the corporation’s cross claim concerning Levandusky’s three air-conditioning units was properly dismissed, as the appropriate forum for resolution of the complaint at this stage is an administrative review proceeding. That brings us to the issue that divided the Appellate Division: the standard to be applied in judicial review of this challenge to a decision of the board of directors of a residential cooperative corporation.
*536 As cooperative and condominium home ownership has grown increasingly popular, courts confronting disputes between tenant-owners and governing boards have fashioned a variety of rules for adjudicating such claims (see generally, Goldberg, Community Association Use Restrictions: Applying the Business Judgment Doctrine, 64 Chi-Kent L Rev 653 [1988] [hereinafter Goldberg, Community Association Use Restrictions]; Note, Judicial Review of Condominium Rulemaking, 94 Harv L Rev 647 [1981]). In the process, several salient characteristics of the governing board homeowner relationship have been identified as relevant to the judicial inquiry.
As courts and commentators have noted, the cooperative or condominium association is a quasi-government — "a little democratic sub society of necessity” (Hidden Harbour Estates v Norman, 309 So 2d 180, 182 [Fla Dist Ct App]). The proprietary lessees or condominium owners consent to be governed, in certain respects, by the decisions of a board. Like a municipal government, such governing boards are responsible for running the day-to-day affairs of the cooperative and to that end, often have broad powers in areas that range from financial decisionmaking to promulgating regulations regarding pets and parking spaces (see generally, Note, Promulgation and Enforcement of House Rules, 48 St John’s L Rev 1132 [1974]). Authority to approve or disapprove structural alterations, as in this case, is commonly given to the governing board. (See, Siegler, Apartment Alterations, NYLJ, May 4, 1988, at 1, col 1.)
Through the exercise of this authority, to which would-be apartment owners must generally acquiesce, a governing board may significantly restrict the bundle of rights a property owner normally enjoys. Moreover, as with any authority to govern, the broad powers of a cooperative board hold potential for abuse through arbitrary and malicious decision-making, favoritism, discrimination and the like.
On the other hand, agreement to submit to the decisionmaking authority of a cooperative board is voluntary in a sense that submission to government authority is not; there is always the freedom not to purchase the apartment. The stability offered by community control, through a board, has its own economic and social benefits, and purchase of a cooperative apartment represents a voluntary choice to cede certain of the privileges of single ownership to a governing body, often made up of fellow tenants who volunteer their *537 time, without compensation. The board, in return, takes on the burden of managing the property for the benefit of the proprietary lessees. As one court observed: "Every man may justly consider his home his castle and himself as the king thereof; nonetheless his sovereign fiat to use his property as he pleases must yield, at least in degree, where ownership is in common or cooperation with others. The benefits of condominium living and ownership demand no less.” (Sterling Vil. Condominium v Breitenbach, 251 So 2d 685, 688, n 6 [Fla Dist Ct App].)
It is apparent, then, that a standard for judicial review of the actions of a cooperative or condominium governing board must be sensitive to a variety of concerns — sometimes competing concerns. Even when the governing board acts within the scope of its authority, some check on its potential powers to regulate residents’ conduct, life-style and property rights is necessary to protect individual residents from abusive exercise, notwithstanding that the residents have, to an extent, consented to be regulated and even selected their representatives (see, Note, The Rule of Law in Residential Associations, 99 Harv L Rev 472 [1985]). At the same time, the chosen standard of review should not undermine the purposes for which the residential community and its governing structure were formed: protection of the interest of the entire community of residents in an environment managed by the board for the common benefit.
We conclude that these goals are best served by a standard of review that is analogous to the business judgment rule applied by courts to determine challenges to decisions made by corporate directors (see, Auerbach v Bennett, 47 NY2d 619, 629). A number of courts in this and other states have applied such a standard in reviewing the decisions of cooperative and condominium boards (see, e.g., Kirsch v Holiday Summer Homes, 143 AD2d 811; Schoninger v Yardarm Beach Homeowners’ Assn., 134 AD2d 1; Van Camp v Sherman, 132 AD2d 453; Papalexiou v Tower W. Condominium, 167 NJ Super 516, 401 A2d 280; Schwarzmann v Association of Apt. Owners, 33 Wash App 397, 655 P2d 1177; Rywalt v Writer Corp., 34 Colo App 334, 526 P2d 316). We agree with those courts that such a test best balances the individual and collective interests at stake.
Developed in the context of commercial enterprises, the business judgment rule prohibits judicial inquiry into actions *538 of corporate directors "taken in good faith and in the exercise of honest judgment in the lawful and legitimate furtherance of corporate purposes.” (Auerbach v Bennett, 47 NY2d 619, 629, supra.) So long as the corporation’s directors have not breached their fiduciary obligation to the corporation, "the exercise of [their powers] for the common and general interests of the corporation may not be questioned, although the results show that what they did was unwise or inexpedient.” (Pollitz v Wabash R. R. Co., 207 NY 113, 124.)
Application of a similar doctrine is appropriate because a cooperative corporation is — in fact and function — a corporation, acting through the management of its board of directors, and subject to the Business Corporation Law. There is no cause to create a special new category in law for corporate actions by coop boards.
We emphasize that reference to the business judgment rule is for the purpose of analogy only. Clearly, in light of the doctrine’s origins in the quite different world of commerce, the fiduciary principles identified in the existing case law — primarily emphasizing avoidance of self-dealing and financial self-aggrandizement — will of necessity be adapted over time in order to apply to directors of not-for-profit homeowners’ cooperative corporations (see, Goldberg, Community Association Use Restrictions, op. cit., at 677-683). For present purposes, we need not, nor should we determine the entire range of the fiduciary obligations of a cooperative board, other than to note that the board owes its duty of loyalty to the cooperative— that is, it must act for the benefit of the residents collectively. So long as the board acts for the purposes of the cooperative, within the scope of its authority and in good faith, courts will not substitute their judgment for the board’s. Stated somewhat differently, unless a resident challenging the board’s action is able to demonstrate a breach of this duty, judicial review is not available.
In reaching this conclusion, we reject the test seemingly applied by the Appellate Division majority and explicitly applied by Supreme Court in its initial decision. That inquiry was directed at the reasonableness of the board’s decision; having itself found that relocation of the riser posed no "dangerous aspect” to the building, the Appellate Division concluded that the renovation should remain. Like the business judgment rule, this reasonableness standard — originating in the quite different world of governmental agency decision- *539 making — has found favor with courts reviewing board decisions (see, e.g., Amoruso v Board of Managers, 38 AD2d 845; Lenox Manor v Gianni, 120 Misc 2d 202; see, Note, Judicial Review of Condominium Rulemaking, op. cit., at 659-661 [discussing cases from other jurisdictions]).
As applied in condominium and cooperative cases, review of a board’s decision under a reasonableness standard has much in common with the rule we adopt today. A primary focus of the inquiry is whether board action is in furtherance of a legitimate purpose of the cooperative or condominium, in which case it will generally be upheld. The difference between the reasonableness test and the rule we adopt is twofold. First —unlike the business judgment rule, which places on the owner seeking review the burden to demonstrate a breach of the board’s fiduciary duty — reasonableness review requires the board to demonstrate that its decision was reasonable. Second, although in practice a certain amount of deference appears to be accorded to board decisions, reasonableness review permits —indeed, in theory requires — the court itself to evaluate the merits or wisdom of the board’s decision (see, e.g., Hidden Harbour Estates v Basso, 393 So 2d 637, 640 [Fla Dist Ct App]), just as the Appellate Division did in the present case.
The more limited judicial review embodied in the business judgment rule is preferable. In the context of the decisions of a for-profit corporation, "courts are ill equipped and infrequently called on to evaluate what are and must be essentially business judgments * * * by definition the responsibility for business judgments must rest with the corporate directors; their individual capabilities and experience peculiarly qualify them for the discharge of that responsibility.” (Auerbach v Bennett, 47 NY2d, supra, at 630-631.) Even if decisions of a cooperative board do not generally involve expertise beyond the usual ken of the judiciary, at the least board members will possess experience of the peculiar needs of their building and its residents not shared by the court.
Several related concerns persuade us that such a rule should apply here. As this case exemplifies, board decisions concerning what residents may or may not do with their living space may be highly charged and emotional. A cooperative or condominium is by nature a myriad of often competing views regarding personal living space, and decisions taken to benefit the collective interest may be unpalatable to one resident or another, creating the prospect that board decisions *540 will be subjected to undue court involvement and judicial second-guessing. Allowing an owner who is simply dissatisfied with particular board action a second opportunity to reopen the matter completely before a court, which — generally without knowing the property — may or may not agree with the reasonableness of the board’s determination, threatens the stability of the common living arrangement.
Moreover, the prospect that each board decision may be subjected to full judicial review hampers the effectiveness of the board’s managing authority. The business judgment rule protects the board’s business decisions and managerial authority from indiscriminate attack. At the same time, it permits review of improper decisions, as when the challenger demonstrates that the board’s action has no legitimate relationship to the welfare of the cooperative, deliberately singles out individuals for harmful treatment, is taken without notice or consideration of the relevant facts, or is beyond the scope of the board’s authority.
Levandusky failed to meet this burden, and Supreme Court properly dismissed his petition. His argument that having once granted its approval, the board was powerless to rescind its decision after he had spent considerable sums on the renovations is without merit. There is no dispute that Levandusky failed to comply with the provisions of the "Alteration Agreement” or "Renovation Guidelines” designed to give the board explicit written notice before it approved a change in the building’s heating system. Once made aware of Levandusky’s intent, the board promptly consulted its engineer, and notified Levandusky that it would not depart from a policy of refusing to permit the movement of pipes. That he then went ahead and moved the pipe hardly allows him to claim reliance on the board’s initial approval of his plans. Indeed, recognition of such an argument would frustrate any systematic effort to enforce uniform policies.
Levandusky’s additional allegations that the board’s decision was motivated by the personal animosity of another board member toward him, and that the board had in fact permitted other residents to jog their steam risers, are wholly conclusory. The board submitted evidence — unrefuted by Levandusky — that it was acting pursuant to the advice of its engineer, and that it had not previously approved such jogging. Finally, the fact that allowing Levandusky an exception to the policy might not have resulted in harm to the building *541 does not require that the exception be allowed. Under the rule we articulate today, we decline to review the merits of the board’s determination that it was preferable to adhere to a uniform policy regarding the building’s piping system.
Turning to the concurrence, it is apparent that in many respects we are in agreement concerning the appropriate standard of judicial review of cooperative board decisions; it is more a matter of label that divides us. For these additional reasons, we believe our choice is the better one.
For the guidance of the courts and all other interested parties, obviously a single standard for judicial review of the propriety of board action is desirable, irrespective of the happenstance of the form of the lawsuit challenging that action.* Unlike challenges to administrative agency decisions, which take the form of article 78 proceedings, challenges to the propriety of corporate board action have been lodged as derivative suits, injunction actions, and all manner of civil suits, including article 78 proceedings. While the nomenclature will vary with the form of suit, we see no purpose in allowing the form of the action to dictate the substance of the standard by which the legitimacy of corporate action is to be measured.
By the same token, unnecessary confusion is generated by prescribing different standards for different categories of issues that come before cooperative boards — for example, a standard of business judgment for choices between competing economic options, but rationality for the administration of corporate bylaws and rules governing shareholder-tenant rights (see, concurring opn, at 545). There is no need for two rules when one will do, particularly since corporate action often partakes of each category of issues. Indeed, even the decision here might be portrayed as the administration of corporate bylaws and rules governing shareholder-tenant rights, or more broadly as a policy choice based on the *542 economic consequences of tampering with the building’s piping system.
Finally, we reiterate that "business judgment” appears to strike the best balance. It establishes that board action undertaken in furtherance of a legitimate corporate purpose will generally not be pronounced "arbitrary and capricious or an abuse of discretion” (CPLR 7803 [3]) in article 78 proceedings, or otherwise unlawful in other types of litigation. It is preferable to a standard that requires Judges, rather than directors, to decide what action is "reasonable” for the cooperative. It avoids drawing sometimes elusive semantical distinctions between what is "reasonable” and what is "rational” (the concurrence rejects the former but embraces the latter as the appropriate test). And it better protects tenant-shareholders against bad faith and self-dealing than a test that insulates board decisions "if there is a rational basis to explain them” or if "an articulable and rational basis for the board’s decision exists.” (Concurring opn, at 548.) The mere presence of an engineer’s report, for example — "certainly a rational explanation for the board’s decision” (concurring opn, at 548) — should not end all inquiry, foreclosing review of nonconclusory asser-, tions of malevolent conduct; under the business judgment test, it would not.
Accordingly, the order of the Appellate Division should be modified, with costs to appellant, by reinstating Supreme Court’s judgment to the extent it granted appellant’s cross motions regarding the steam riser and severed and set down for assessment the issue of damages and, as so modified, affirmed.

 We of course do not disregard the form of action. In determining whether appellant’s decision was "arbitrary and capricious or an abuse of discretion” (CPLR 7803 [3]), we would use "business judgment,” the concurrence some form of "rationality” or "reasonableness.” By analogy, we hold today in Akpan v Koch (75 NY2d 561, 574 ([decided today]) that because a governmental agency took the required "hard look” under the State’s environmental protection laws, its action cannot be characterized as arbitrary and capricious or an abuse of discretion under CPLR 7803 (3). So too here, board action that comes within the business judgment rule cannot be characterized as arbitrary and capricious, or an abuse of discretion.