[894 NYS2d 315]

361 West 121st Housing Dev. Fund Corp., Respondent, v Lisa Frazier et al., Appellants.

Supreme Court, Appellate Term, First Department, December 1, 2009

## APPEARANCES OF COUNSEL

*Goldberg, Scudieri, Lindenberg*, New York City, for appellants. *Andrea Shapiro*, New York City, for respondent.

## OPINION OF THE COURT

Per Curiam.

Order dated October 23, 2008, reversed, without costs, and tenants' motion granted to the extent of staying execution of the warrant.

After tendering the full amount ($9,384.09) of the maintenance arrears found to have been due landlord upon the trial of the underlying nonpayment summary proceeding, tenants entered into a so-ordered stipulation consenting to the reentry of a final judgment, with execution of the warrant stayed on specified conditions. The stipulation required tenants to pay landlord's counsel fees (denominated as additional rent in the governing proprietary lease agreement) of $13,250 in 16 monthly installments due the first day of each month, as well as accruing maintenance as it became due, with time of the essence. Tenants' initial October 2008 installment payment for attorney's fees, apparently processed via tenants' bank's on-line banking system, was $8.13 short and was not transferred to landlord's bank account until after landlord's issuance of a default notice on October 6.

In these circumstances, and in the absence of any serious claim that tenants materially breached the base rent requirements set forth in the stipulation, tenants' lapse in connection with the stipulation's attorney's fee component should be excused pursuant to the court's supervisory power over enforcement of so-ordered stipulations (*see Malvin v Schwartz*, 65 AD2d 769 [1978], *affd* 48 NY2d 693 [1979]). Particularly in housing matters where a forfeiture of shelter is implicated, a default of this nature should be "measured against the harsh result[s] which would obtain upon literal enforcement of the default pro-

vision in the stipulation" (*Bank of N.Y. v Forlini*, 220 AD2d 377, 378 [1995]; *see also 2246 Holding Corp. v Nolasco*, 52 AD3d 377 [2008]). We note that, so far as shown, tenants have complied with their payment obligations during the period of the stay granted by this court.

McKEON, P.J. (dissenting). Tenant appellants are shareholders of a low-income Housing Development Fund Corporation cooperative located on West 121st Street, in Manhattan. Starting in December 2006 and for the next 13 months, tenants stopped paying their monthly maintenance charges of $410. This nonpayment summary proceeding followed, with tenants interposing a warrant of habitability counterclaim seeking a rent abatement. It appears that at the ensuing trial, tenants refused to stipulate to the admissibility of the most routine documents, unnecessarily extending the trial's duration and increasing the amount of legal fees incurred by petitioner.

In its posttrial decision, Civil Court held that, pursuant to the terms of the governing proprietary lease, it was tenants who were responsible for the painting, plastering, plumbing and electrical work that they had insisted was necessary to ameliorate claimed conditions in their apartment, denied tenants any abatement and specifically found that "despite repeated requests" tenants had denied petitioner access to the apartment. Aside from the issues litigated in this proceeding, Civil Court referenced a separate action initiated by tenants against petitioner, based upon a claimed lead-related condition, which was ultimately dismissed on the merits by Supreme Court.

When all was said and done, a possessory judgment was entered against tenants, who were found to have owed almost $16,000 to petitioner—or, more accurately to their fellow shareholders and neighbors who had to make up the shortfall while tenants pursued dubious litigation against petitioner. Not having the funds to fully satisfy the final judgment, tenants entered into a stipulation with petitioner, so-ordered on September 24, 2008, which provided for a payment schedule for current maintenance and monthly payments to satisfy the judgment arrears. Tenants, represented by counsel, stipulated, inter alia, that "[a]s to payment dates time is of the essence."

Tenants tendered the very first payment due under the stipulation over a week late, and shortchanged petitioner by about $8 to boot. In response, petitioner sought to execute on the war-

rant of eviction and accelerate tenants' entire debt—remedies which were agreed to by tenants in the settlement stipulation. By order to show cause, tenants moved to stay execution of the warrant, relief which was denied by Civil Court, appropriately so, in my view. Tenants now appeal to this court, which issued a conditional stay pending the outcome of the appeal.

The majority euphemistically characterizes tenants' untimely and deficient tender of the initial installment payment as a "lapse." In proper context, it is just one more example of a mindset, abundantly clear in the record, that the rules apply to others, not tenants. And it was the type of conduct which petitioner sought to avoid when, after years of unnecessary litigation, it insisted that tenants agree to a "time of the essence" payment provision in the court ordered stipulation (*see generally Mill Rock Plaza Assoc. v Lively*, 224 AD2d 301 [1996]).

In declining to accept the "de minimis" breach excuse offered by tenants—but embraced by the majority—Civil Court rightly concluded, on the then existing facts (including that tenants were required to seek help from Department of Social Services to make the first installment payment) that tenants were unlikely to comply with the remaining settlement terms, mercifully sparing petitioner (and the cooperators who pay the bills) the specter of more court appearances, legal fees and aggravation.

As a postscript, the majority notes that tenants appear to have lived up to their settlement obligations during the stay issued by this court (information not known to Civil Court unless possessed of the powers of a soothsayer), perhaps suggesting that tenants have now seen the light. I decline to join in the "pat on the back." I suspect that tenants newfound recognition that they must fulfill their obligations under the stipulation has less to do with a spirit of cooperation than with the realization that someone had the temerity to finally say: "Enough is enough."

As the Court of Appeals aptly stated in *Matter of Levandusky v One Fifth Ave. Apt. Corp.* (75 NY2d 530, 537 [1990], quoting *Sterling Vil. Condominium, Inc. v Breitenbach*, 251 So 2d 685, 688 n 6 [Fla Dist Ct App 1971]): "Every man may justly consider his home his castle and himself the king thereof; nonetheless his sovereign fiat to use his property as he pleases must yield, at least in degree, where ownership is in common or cooperation with others."

I respectfully dissent, and vote to affirm Civil Court's discretionary ruling to deny tenant's application to stay execution of the warrant of eviction.

HEITLER and SHULMAN, JJ., concur; McKEON, P.J., dissents in a separate opinion.