[943 NYS2d 100]

Cornelia Sharpe Bregman, Appellant, v 111 Tenants Corp.,
Respondent.

First Department, May 3, 2012

**APPEARANCES OF COUNSEL**

*Stiefel & Cohen*, New York City (*Herbert L. Cohen* and *Philip P. Foote* of counsel), for appellant.

*Hoey, King, Epstein, Prezioso & Marquez*, New York City (*David S. Kasdan* of counsel), for respondent.

**OPINION OF THE COURT**

SAXE, J.

This appeal challenges the enactment and enforcement of a resolution adopted by the board of directors of defendant, a residential cooperative corporation. The resolution prohibits the subleasing, without board approval, of a shareholder's apart-

ment for more than two years in any four-year period, and institutes sublet fees. Plaintiff, who has owned the shares to two apartments in the building since its conversion to cooperative ownership in 1972, and who has subleased both apartments for virtually the entire time, contends that although the language of the resolution appears to apply to all shareholders, in fact she is its sole target. She also claims that in the course of purportedly enforcing the terms of this resolution, defendant and its managing agent have taken steps not justified either by the terms of that resolution or by any other authority, abusing their discretion and breaching their fiduciary duty toward her as a shareholder.

Plaintiff asserts that in 1972, when she was a tenant residing in apartment 6C at 111 East 75th Street, then a rent-controlled residential apartment building, the owners of the building sought to convert it to cooperative ownership. She states that because they had received an insufficient number of subscriptions to qualify for the conversion, a man named Paul Green, a principal of the group of investors that owned the building, approached her and asked her to purchase not only the apartment in which she then resided, but also another unit, penthouse apartment 10A. Recognizing that she would need to sublease at least one and possibly both of those apartments, she claims that she obtained an agreement giving her "full, unconditional and perpetual sublet rights to both Apartments" before agreeing to purchase them. With that assurance, she says, she purchased both cooperative apartments.

However, plaintiff's professed understanding that she would have "full, unconditional and perpetual sublet rights" is not reflected in any of the formal documents that she signed. The proprietary leases executed by plaintiff contain an explicit provision requiring board authorization for subletting:

> "[T]he Lessee shall not sublet the whole or any part of the apartment or renew or extend any previously authorized sublease, unless consent thereto shall have been duly authorized by a resolution of the Directors . . . Any consent to subletting may be subject to such conditions as the Directors . . . may impose. There shall be no limitation on the right of Directors . . . to grant or withhold consent, for any reason or for no reason, to a subletting."

Indeed, a document signed by plaintiff, by Paul Green for the owners and by Stanley Weller for the sponsor, in connection

with plaintiff's purchase of the two apartments, specifically addressed plaintiff's circumstances, and fails to support plaintiff's claim of unfettered sublet rights. That document, bearing the date of April 14, 1972, acknowledges that plaintiff "shall be permitted to sublet her apartments *provided the consent of the Board . . . is obtained*" (emphasis added), and further provides that "[t]he owners will use their best efforts to have the Board . . . not unreasonably withhold their consent to subletting by [plaintiff]." But it does *not* contain a provision altering or diminishing in any way the board's right to grant *or withhold* its consent.

An exchange of correspondence from that time indicates that the terms of the foregoing document were negotiated, and that the owners explicitly *rejected* proposed language that would have required that the board of directors not unreasonably withhold its consent to plaintiff's subletting her apartments. First, a letter from the owners to the sponsor's cooperative coordinator, dated May 1, 1972, recited that it was returning plaintiff's checks and her attorney's letter, and explained that since the proprietary leases did *not* provide that board consent may not be unreasonably withheld, and since the owners could not bind the future board of directors, the owners would not agree to the inclusion of language providing that the Board's consent "shall not unreasonably be withheld." The letter added that "[t]he only thing we can do is to have the owners agree that if they are members of the Board, they will not unreasonably withhold their consent." A second letter, dated June 1, 1972, from the sponsor's cooperative coordinator to plaintiff's attorney, confirmed plaintiff's purchase of the apartments, and documented that plaintiff's lawyer had agreed to the final form of the agreement in which the phrase "which consent shall not unreasonably be withheld" was deleted, and added instead was the language, "the owners will use their best efforts to have the Board of Directors not unreasonably withhold their consent to subletting by [plaintiff]."

As a result of this negotiation, the final signed document, purportedly dated April 14, 1972, did not contain any language promising that the board would not unreasonably withhold its consent to sublets, let alone any language that plaintiff would have an unfettered right to sublease the apartments she was purchasing. It merely recited that the owners would "use their best efforts to have the Board of Directors not unreasonably withhold their consent to subletting by [plaintiff]."

After the 1972 purchases, plaintiff lived in apartment 6C for two years while renovating apartment 10A, but thereafter, during the 30 years that followed, she sublet both apartments. She states that while she "occasionally" submitted the credentials of her subtenants to the board "[a]s a courtesy," she did not include in her subleases any provision making the landlord's consent to the sublease a condition to the sublease, because she believed that her arrangement with the board rendered such consent unnecessary.

On September 16, 2003, allegedly prompted by a board member's learning the amount of rent plaintiff charged her sublessees, the board adopted the resolution at issue, stating that

"no [l]essee shall be permitted to sublet the whole or any part of an apartment or renew or extend any previously authorized sublease for more than two years during any four consecutive year period unless consent thereto has first been duly authorized by a resolution of the Directors or . . . by [l]essees owning at least 66-$^2$/$_3$% of the then issued and outstanding shares of the Corporation."

A sublease for penthouse apartment 10A that plaintiff had submitted to the board for approval in August 2003 was then conditionally approved by the board, the condition being that plaintiff provide the board with an executed document titled "Shareholder Acceptance of Corporation's Sublet Policies." The document specifically referenced plaintiff's penthouse unit: "The undersigned understands that the right to sublet Penthouse A at 111 East 75th Street is governed exclusively by the Corporation's by-laws including but not limited to the following resolutions adopted by the Board of Directors," followed by the language of the resolution. It then stated, "Furthermore, the undersigned agrees that the Board's decision to waive the production of certain documents normally required during the sublet application in no way creates precedent or requirements for any future waivers or exceptions with respect to the Corporations [sic] then current sublet policy and application process."

But plaintiff encountered difficulty two years later, when she submitted an application for another sublease on the same apartment. On November 21, 2005, the managing agent's office rejected the new sublet application for penthouse apartment A, with the message "As per . . . Managing Agent of 111 East 75th Street, I am not to accept any sublet packages for Apt. PH

A.'' A subsequent explanatory letter from the board president, dated February 10, 2006, stated that under the new sublet policy, that apartment would not be eligible for sublet again until September 2007. It added,

> "While the policy does allow the Board to make exceptions to the frequency rule, a shareholder must demonstrate that there are extenuating circumstances surrounding the sublet. If you feel that this would apply, the Board asks that you provide to us additional information so that we may make a fully informed decision at our next meeting."

Finally, with regard to plaintiff's previous assertions that she had special rights to sublet her apartments in perpetuity, the board requested that she provide documentation specifically stating the existence and scope of those rights, as the board had no record of such an agreement.

The response by plaintiff's counsel questioned the board's reliance on the resolution for its outright rejection of the application, pointing out that the resolution merely requires board consent to sublets for more than two years of any four-year period, and nowhere mentions proof of extenuating circumstances.

When no further action was taken on her application, plaintiff commenced this litigation. The complaint alleged that the board's denial of plaintiff's sublease application was arbitrary and capricious, was not a proper exercise of any legitimate business judgment, and that it had the effect of improperly creating a class of shareholders who could sublet and a class of shareholders who could not. Plaintiff alleged economic harm in lost rental income and sought an injunction preventing further denial of her sublease applications. Defendant counterclaimed for attorneys' fees and expenses pursuant to the terms of the proprietary lease.

In July 2010, plaintiff, represented by substituted counsel, moved to amend her complaint. Plaintiff explained that in her original complaint she was merely attempting to recoup lost rental income, but that the conduct of the managing agent after the action was commenced made it clear that defendant and its managing agent were attempting to divest her of her rights as a shareholder. Specifically, plaintiff claimed that the cooperative had absolutely refused to permit her to sublet either of the two apartments, and that the managing agent had continually and systematically interfered with her ownership rights by preventing or unreasonably delaying access to her apartments by her

contractors. Plaintiff's proposed amended complaint added the contention that the original board assumed the contractual obligations of the sponsor and confirmed her perpetual subletting rights at its first meeting. Plaintiff offered in support of that contention a letter dated February 2, 1983, from an attorney who then represented the board, stating:

"In view of the arrangements made at the time the building went cooperative and you purchased two apartments on condition that you . . . be permitted to sublet same, we have investigated your proposed sub tenant . . . and finding him suitable, I am pleased to advise you that on behalf of the Board of Directors of 111 Tenants Corp. the proposed sublet is hereby approved."

Plaintiff also submitted an affidavit dated May 8, 2007 by that same former representative of the board, now deceased, stating that he was a principal of the sponsor at the time of the building's conversion, and specifically stating,

"As I recall, at one of the early Board meetings, the arrangements which we had made with Mrs. Bregman at the time of the purchase were acknowledged by the co-op's Board, the intention being that it would not simply be an agreement with the sponsor but also an agreement which would be understood to be followed by the co-op, and the minutes should reflect the foregoing."

Accordingly, plaintiff sought to add causes of action for breach of contract and breach of fiduciary duty against defendant and specified and unspecified members of the Board, and to add a claim of tortious interference with plaintiff's proprietary lease as against the managing agent. She also sought to add as defendants the management company, the managing agent, and the individual board members. Defendant cross-moved for summary judgment dismissing the complaint.

The motion court granted defendant's cross motion for summary judgment dismissing the complaint, and denied, as moot, plaintiff's motion to amend.

■ We agree with the motion court. Nothing in the documents plaintiff has submitted supports her claimed contractual right to unfettered subletting rights. As provided by the proprietary leases, the right to sublet that she acquired when she purchased the shares to her apartments always required board

consent, and there was no protection against consent being unreasonably withheld. None of plaintiff's submitted documents provides otherwise.

Even assuming that it is proper for this Court to rely on the 1983 letter and 2007 affidavit by the now-deceased former principal of the sponsor, these documents do not sufficiently support plaintiff's claim. The 1983 acknowledgment of "the arrangements made at the time the building went cooperative and you purchased two apartments on condition that you . . . be permitted to sublet same," actually proceeded to announce that consent to a proposed sublet had been granted, which shows that those "arrangements" incorporated the requirement of Board consent. Similarly, the 2007 affidavit, asserting that "[t]he sponsor . . . agreed that it would use its best efforts to have the Board consent to all sublease applications, it being our intent that the right to sublease would be denied only if the proposed subtenant was found to be objectionable," does not assert that the sponsor had the ability to bind the board, and explicitly acknowledges the requirement of board consent for all subleases.

Moreover, even if plaintiff had been granted such preferential unfettered sublet rights, Business Corporation Law § 501 (c), which provides that "each share [issued by a corporation] shall be equal to every other share of the same class," precludes any such special subletting rights (*see Wapnick v Seven Park Ave. Corp.*, 240 AD2d 245 [1997]; *see also Krakauer v Stuyvesant Owners*, 301 AD2d 450 [2003]).

As the motion court observed, *Spiegel v 1065 Park Ave. Corp.* (305 AD2d 204 [2003]) is directly applicable here. In that case, where a shareholder challenged a managing agent's denial of consent to a proposed sublease, this Court invalidated cooperative bylaws and proprietary leases that gave original purchasers such as the plaintiff greater subletting privileges than were allowed to subsequent purchasers. We remarked that

> "it does not avail plaintiff that she relied on the sponsor's offer of special subletting privileges in buying the apartment, that the cooperative learned of her intent to sublet the apartment when she purchased a second larger apartment in the building with her husband, that the cooperative is continuing to permit subletting by other original shareholders and that the cooperative is itself subletting an apartment" (*id.* at 205).

Plaintiff's attempt to distinguish *Spiegel* based on "the sponsor's offer of special subletting privileges" is unavailing. The two cases merely involve two different situations in which shareholders of common shares could claim to have rights beyond those of other holders of common shares, whether based on bylaws, proprietary lease provisions, or agreements "assumed by" the cooperative corporation. We view the directive of Business Corporation Law § 501 (c) as not limited to unequal treatment in proprietary leases or bylaws. It precludes the proposition, advanced by plaintiff, that a shareholder purchasing common shares may, by contract with the cooperative, obtain special rights that could not be granted in the corporate documents themselves.

■ Plaintiff argues that the September 2003 resolution was enacted in bad faith, since its sole intent is to discriminate against her. She points out that the notice her attorney was sent regarding the board meeting on September 16, 2003 said it was to "discuss the sublet issue for [plaintiff]." She asserts that adoption of the resolution at that particular meeting shows that it was all about her, and that such "targeted" action establishes defendant's bad faith. However, the record fails to support her claimed right to relief. As explained in *Matter of Levandusky v One Fifth Ave. Apt. Corp.* (75 NY2d 530, 538 [1990]),

> "[A cooperative] board owes its duty of loyalty to the cooperative—that is, it must act for the benefit of the residents collectively. So long as the board acts for the purposes of the cooperative, within the scope of its authority and in good faith, courts will not substitute their judgment for the board's. Stated somewhat differently, unless a resident challenging the board's action is able to demonstrate a breach of this duty, judicial review is not available."

> "The business judgment rule protects the board's business decisions and managerial authority from indiscriminate attack. At the same time, it permits review of improper decisions, as when the challenger demonstrates that the board's action has no legitimate relationship to the welfare of the cooperative, deliberately singles out individuals for harmful treatment, is taken without notice or consideration of the relevant facts, or is beyond the scope of the board's authority" (*id.* at 540).

The board here was prompted by a legitimate interest in the

welfare of the cooperative: maximizing owner residency and therefore the value of the shares. It is therefore authorized to adopt a resolution in furtherance of that interest.

Moreover, while a board may not deliberately single out individuals for harmful treatment (*Levandusky*, 75 NY2d at 538), if a board of directors becomes aware of a situation or conduct of a particular shareholder that it considers contrary to the interests of the cooperative generally, there is no prohibition against the board's adoption of a policy protective of those broader interests, even if the policy is responsive to a single shareholder's situation or conduct.

Notably, the proprietary lease limits the shareholders' subletting rights by requiring the board's consent and specifying that the board may grant or withhold consent for any reason or for no reason. So, even if the language of the 2003 resolution does not appear to authorize a refusal to even consider a sublet application, the board has always retained the right to withhold consent to a sublet without providing any reason.

Although the board's new policy, adopted in the 2003 resolution, may prevent plaintiff from subletting her apartments in the same manner as she had done for the first 30 years, adoption of the resolution does not qualify as the type of deliberately abusive treatment that would justify allowing a legal challenge to the board's decision. Assuming that plaintiff's situation was the impetus for the board's decision to restrict subletting, and that plaintiff is, as she claims, currently the only shareholder affected by the resolution, nevertheless the board's adoption of a restrictive resolution applies to all shareholders. The fact that plaintiff will be more immediately affected by the resolution does not render defendant's act discriminatory or applicable solely to her.

The case of *Louis & Anne Abrons Found. v 29 E. 64th St. Corp.* (297 AD2d 258 [2002]) is distinguishable. In that case, an issue of fact was presented as to whether a new sublet fee was imposed in bad faith, solely for its impact on the plaintiff. Evidence submitted on the summary judgment motions established that the plaintiff owned and subleased all the commercial units and that the board had previously banned all residential subleases, so the newly adopted fee could *only* have had an impact on the plaintiff. Here, in contrast, plaintiff's assertions are insufficient to establish that she is the only shareholder whom the newly adopted rule affects.

Plaintiff's citation to *Tsimis v Rudnick, Brett, Wyckoff* (59 AD2d 871 [1977], *affd* 45 NY2d 976 [1978]) is understandable,

because in that case, under circumstances similar to those present here, this Court declared that the plaintiffs had the absolute right to sublet the second apartment they purchased in the building when it converted to cooperative ownership, notwithstanding the board's newly adopted policy disapproving of subleasing. Importantly, however, *Tsimis* predated both *Levandusky*, which gave cooperative boards of directors the authority to freely adopt a new policy in the legitimate interest of the cooperative, and *Spiegel v 1065 Park Ave. Corp.* (305 AD2d 204 [2003], *supra*). Nor did the *Tsimis* decision consider the possible impact of Business Corporation Law § 501 (c). In view of these intervening cases, we decline to treat *Tsimis* as controlling.

Finally, plaintiff's argument that a triable issue of fact exists as to whether she is a holder of unsold shares for apartment 10A—presumably premised on the broader subletting rights for the holders of unsold shares provided by paragraph 38 of the proprietary lease—was never raised in the motion court. Indeed, the word "unsold" does not appear in any of the papers contained in the record before us. Therefore, the issue is unpreserved for our review. Notably, it is *not* purely a question of law that clearly appears on the face of the record, unavoidable by respondent if raised; rather, had it been timely raised, defendant could have submitted evidence seeking to disprove the claimed entitlement (*see First Intl. Bank of Israel v Blankstein & Son*, 59 NY2d 436, 447 [1983]; *DiFigola v Horatio Arms*, 189 AD2d 724, 726 [1993]).

Leave to amend was properly denied because plaintiff's proposed amended complaint, based on the assertion that she is entitled to preferential subletting rights, "suffers from the same fatal deficiency as the original" (*"J. Doe No. 1" v CBS Broadcasting Inc.*, 24 AD3d 215, 216 [2005]).

We have considered plaintiff's remaining arguments and find them to be without merit.

Accordingly, the order of the Supreme Court, New York County (Joan A. Madden, J.), entered January 31, 2011, which granted defendant-owner's cross motion for summary judgment dismissing the complaint, and denied, as moot, plaintiff-shareholder's motion for leave to amend the complaint, should be affirmed, without costs.

GONZALEZ, P.J., MOSKOWITZ, ACOSTA and FREEDMAN, JJ., concur with SAXE, J.

Order, Supreme Court, New York County, entered January 31, 2011, affirmed, without costs.