1110-1130 Stadium Owners Corp. v Bronx 1 LLC (2025 NY Slip Op 50361(U))

[*1]

1110-1130 Stadium Owners Corp. v Bronx 1 LLC

2025 NY Slip Op 50361(U)

Decided on March 21, 2025

Supreme Court, Kings County

Maslow, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on March 21, 2025
Supreme Court, Kings County

1110-1130 Stadium Owners Corp., Catherine Budington, Pam Disaverio, Kathy Groger, Michael Ingrasci and Joe Torres, Plaintiffs,

against
Bronx 1 LLC, Defendant.

Index No. 525121/2022

Aaron D. Maslow, J.

The following papers efiled on NYSCEF were used on this motion:
Plaintiffs' papers in support — NYSCEF Document Nos. 43-52
Defendant's papers in opposition — NYSCEF Document Nos. 54-63
Plaintiffs' papers in reply — NYSCEF Document No. 65
Upon the foregoing papers, having heard oral argument,[FN1]
and due deliberation having been had, the within motion by Plaintiffs, pursuant to CPLR §3211 (a) (1), (3), and (7), to dismiss Defendant's counterclaims with prejudice and award Plaintiffs reasonable attorneys' fees, costs, and disbursements pursuant to the co-op proprietary lease and 22 NYCRR 130-1 is determined as follows.
Introduction
This is an action by Plaintiffs, a cooperative corporation owning two Bronx apartment buildings and individual board of directors members, shareholders, and proprietary lessees, against Defendant, the owner and holder of unsold shares appurtenant to 30 out of 129 units. The complaint alleges that Defendant has failed to sell its shares so as to reduce its proportionate share of ownership in the cooperative corporation, thus rendering the co-op non-viable. (See generally NY St Cts Elec Filing [NYSCEF] Doc No. 47, amended complaint.) In a prior motion, this Court denied Defendant's CPLR 3211 motion to dismiss the amended complaint (see NYSCEF Doc No. 50, order).
Defendant answered the complaint and counterclaimed against Plaintiffs. The first counterclaim alleges breach of contract against Plaintiff co-op corporation. The second counterclaimed alleges breach of fiduciary duty/shareholder discrimination against individual board of directors members. (See NYSCEF Doc No. 48, answer.) As mentioned above, Plaintiffs have now moved to dismiss the counterclaims and for other relief (see NYSCEF Doc No. 43, notice of motion).
First Counterclaim
In sum and substance, Defendant alleges breach of contract against the co-op corporation based on the following proprietary lease provisions:
• Pursuant to the terms of the lease agreements the co-op must, "at its expense, keep in good repair all of the Buildings including all of the apartments."
• That the co-op must "maintain and manage the Buildings as first-class apartment buildings . . . and shall provide the apartment[s] with a proper and sufficient supply of hot and cold water and of heat."
• That Defendant is entitled to "quietly have, hold and enjoy the apartment[s] without any let, suit, trouble or hindrance" from the co-op. (NYSCEF Doc No. 48, answer ¶¶ 203-205.)
It is alleged by Defendant that Plaintiff co-op corporation failed to provide adequate heat, hot water, and cold water to its apartments; failed to keep the building in good repair; failed to maintain and manage its buildings as first-class apartment buildings; interfered with the rights of Defendant and its subtenants to quietly enjoy their apartments; subjected Defendant to unjust and unfounded lawsuits; and failed to repair Defendant's apartments (see id. ¶¶ 207-212).
Plaintiffs assert that this counterclaim is insufficiently particular to give the court and the Plaintiffs notice of the transactions, occurrences, or series of transactions or occurrences intended to be proved as well as the material elements of a cause of action. More specifically, Plaintiffs maintain that the proprietary lease provisions were not identified, the specific apartments owned by Defendant which were affected were not identified, and how the Plaintiffs committed the alleged breaches of contract was not detailed. Also, to state a claim for breach of the covenant of quiet enjoyment there must have been actual or constructive eviction, claimed Plaintiffs, and none was alleged. (See NYSCEF Doc No. 52, Plaintiffs' mem law at 5-9.)
The law applicable to a motion to dismiss pursuant to CPLR 3211 (a) (7) (failure to state a cause of action) in a breach of contract action was recently set forth as follows:
"On a motion to dismiss a complaint pursuant to CPLR 3211 (a) (7), the court must accept the facts alleged by the plaintiff as true and liberally construe the complaint, according it the benefit of every possible favorable inference" (Dee v Rakower, 112 AD3d 204, 208 [2013]; see Leon v Martinez, 84 NY2d 83, 87-88 [1994]; Davids v State of New York, 159 AD3d 987, 989 [2018]). " 'Evidentiary material submitted by the plaintiff in opposition to such a motion may be considered to remedy defects in the complaint' " (Pierce Coach Line, Inc. v Port Wash. Union Free Sch. Dist., 213 AD3d 959, 960 [2023], quoting NFA Group v Lotus Research, Inc., 180 AD3d 1060, 1061 [2020]). " 'If the court considers evidentiary material, the criterion then becomes whether the proponent of the pleading has a cause of action, not whether he [or she] has stated one' " (Cordell Marble Falls, LLC v Kelly, 191 AD3d 760, 762 [2021] [internal quotation marks omitted], quoting Sokol v Leader, 74 AD3d 1180, 1181-1182 [2010]; see Guggenheimer v Ginzburg, 43 NY2d 268, 275 [1977]). "In this procedural posture, the [*2]allegations of a complaint, supplemented by a plaintiff's additional submissions, if any, must be given their most favorable intendment" (Arrington v New York Times Co., 55 NY2d 433, 442 [1982]).
" 'The essential elements of a breach of contract cause of action are the existence of a contract, the plaintiff's performance under the contract, the defendant's breach of that contract, and resulting damages' " (Ripa v Petrosyants, 203 AD3d 768, 769-770 [2022] [internal quotation marks omitted], quoting Stewart v Berger, 192 AD3d 940, 941 [2021]). " 'To state a cause of action to recover damages for a breach of contract, the plaintiff's allegations must identify the provisions of the contract that were breached' " (NFA Group v Lotus Research, Inc., 180 AD3d at 1061 [alterations omitted], quoting Barker v Time Warner Cable, Inc., 83 AD3d 750, 751 [2011]). "Where the parties' agreement is before the court in a breach of contract action, 'its provisions establish the rights of the parties and prevail over conclusory allegations of the complaint' " (Wedgewood Care Ctr., Inc. v Kravitz, 198 AD3d 124, 132 [2021], quoting 805 Third Ave. Co. v M.W. Realty Assoc., 58 NY2d 447, 451 [1983]). (1470 39th St. LLC v Goldberg, 226 AD3d 853 [2d Dept 2024].)
Here, Defendant has submitted the affirmation of Clayton Johnson, a senior property manager at Chestnut Holdings of New York Inc., whose responsibilities include managing Defendant's apartments in the premises owned by the co-op corporation. He described lack of communication on the part of the buildings' managing agent, such as when there was an elevator modernization, resulting in an elevator being offline which affected senior citizen subtenants who used wheelchairs. During the winter of 2024-2025, there were multiple issues with the boiler providing insufficient heat, without communication. The superintendent's common response when subtenants have emergencies is "I don't work for Chestnut." The building staff will not cooperate with Defendant's brokers and vendors. (See NYSCEF Doc No. 59, Johnson aff ¶¶ 1-8.) Mr. Johnson also provided details specific to individual apartments held by Defendant:
10. 1130 - 5E: Water penetration from exterior. The damage extended to the personal belongings and per the occupant affected their health.
11. 1130-LH: Water penetration in master bedroom, kitchen, 2nd Bedroom. This has happened over and over for more than two years. Furniture and clothing have been damaged with mold growth. The Coop was lackadaisical with their approach to resolving this matter. One manager, Tom Nelson, even laughed about the matter and stated that Bronx 1 should just sell its apartments and move on. This cost us $12,000 in lost rent.
12. 1130- LH: another incident in the same apartment was a waste leak from a defective standing waste pipe from unit above the bathroom (super's unit). This went on for over a month and caused severe damage and mold growth. We spoke to the Super on multiple occasions to get this work resolved, and the statement was always, "the Super is looking into it and will take care of it." This waste leak carried on until there was mold growing on the ceiling.
13. 1130- 2F: The Coop has had an ongoing plumbing issue with a boiler mixing valve. As a result, water temperature is not controlled properly. The water was shut off in this unit to attempt a repair the situation but upon returning service, the tenant had no cold water; the faucets in both bathrooms and kitchen are only running hot water. The [*3]building staff took 11 days to respond to our requests to even inspect the issue.
14. 1130-1C: Tenant has a leak from the unit above in the bathroom. The Super was informed by the tenant and by management, but the Super said he was very busy with a shareholder unit and will get back to them. This was never addressed. In addition to the leak, there is plaster and paint damage. We ended up sending our own contractor to make repairs even though this was the Coop's responsibility.
15. 1130- 2J: The tenant has complained for more than seven months about leaking windows, but the Coop informed the tenant that there is nothing that can be done. To this day, wind and water still come through the panes.
16. 1130 - 1B: The tenant has complained to the Super since January 2025 about the patio door not locking properly. It's still not working. This is the responsibility of the Coop to maintain and is a security issue.
17. 1110- 2G: tenant reached out to our office during the evening about a large bifold closet door falling in her apartment. She stated when she called the Super, he told her she had to wait until Monday for him to come look at the problem. This was an emergency and since he lives in the building, this should have been assessed immediately. However, it was not. The Super actually took five days to physically go to the apartment and remove the fallen doors. The same tenant called the super on January 22, 2025, regarding no heat. He told her that, "no one else is complaining" about heat and he never visited the apartment again to address this. (Id. ¶¶ 10-17.)
The Court finds that affording the allegations in the first counterclaim, as supplemented by Mr. Johnson's affirmation, their most favorable intendment, Defendant sufficiently alleged a breach of contract cause of action. To the extent that Defendant failed to identify particular apartments in the counterclaim this was cured through the details provided by Mr. Johnson. Together they give sufficient notice of the transactions, occurrences, or series of transactions or occurrences intended to be proved. Moreover, Plaintiffs failed to demonstrate that any fact alleged in the counterclaim was undisputedly not a fact at all.
Since Defendant quoted provisions of the proprietary lease which were allegedly breached, it was not necessary to identify the particular paragraph numbers. There is no requirement specific to breach of contract claims that they be pled with a heightened level of particularity (see Miami Firefighters' Relief & Pension Fund v Icahn, 199 AD3d 524 [1st Dept 2021]; Vandashield Ltd. v Isaacson 146 AD3d 552, 554 [1st Dept 2017]; East Hampton Union Free School Dist. v Sandpebble Builders, Inc., 66 AD3d 122, 125 [2d Dept 2009], affd 16 NY3d 775 [2011]).
In paragraph 210 of its answer, Defendant is alleging interference with a right to quiet enjoyment of apartments which is guaranteed in paragraph 10 of the proprietary lease. It argues, therefore, that the requirement that actual or constructive eviction be demonstrated is not applicable, as would otherwise necessary with respect to an implied covenant of quiet enjoyment. However, the Court agrees with Plaintiff on this issue. Even if the proprietary lease contains a covenant of quiet enjoyment, "a tenant must show an ouster, or if the eviction is constructive, an abandonment of the premises" (Schwartz v Hotel Carlyle Owners Corp., 132 AD3d 541, 542 [1st Dept 2015]). None is alleged by Defendant. Nonetheless this does not vitiate the cause of action for breach of contract since there are other proprietary lease provisions claimed to have been breached.
Based on the foregoing, Defendant has satisfied the prerequisites described in the above [*4]case law for a viable cause of action in order to avoid dismissal pursuant to CPLR 3211 (a) (7).
Plaintiffs claim that, pursuant to CPLR 3211 (a) (1), dismissal of the first counterclaim is warranted based on the submission of documentary evidence, to wit, the proprietary lease. However, nothing in the lease demonstrates that Defendant has no cause of action for breach of contract (see Treeline 990 Stewart Partners, LLC v RAIT Atria, LLC, 107 AD3d 788 [2d Dept 2013]). Likewise, there is no merit to Plaintiffs' CPLR 3211 (a) (3) argument that Defendant lacks legal capacity to sue.
Second Counterclaim
In Defendant's second counterclaim, it is alleged that the five individual board member Plaintiffs owed a fiduciary duty to treat all shareholders fairly, and breached that duty by discriminating against Defendant and showing a preference for other shareholders with respect to repairs, responding to inquiries, and approving subtenants (see generally NYSCEF Doc No. 48, answer ¶¶ 214-234).
Plaintiffs assert that Defendants fail to state a cause of action for breach of fiduciary duty as a matter of law because individual directors may not be subject to liability absent allegations that they committed separate tortious acts. No such separate tortious acts were alleged in the counterclaim. (See NYSCEF Doc No. 52, Plaintiffs' mem law at 14-16.)
"The board of directors of a cooperative corporation owes its shareholders a fiduciary duty (see Matter of Levandusky v One Fifth Ave. Apt. Corp., 75 NY2d 530, 538 [1990]; Board of Mgrs. of Fairways at N. Hills Condominium v Fairway at N. Hills, 193 AD2d 322, 324-325 [1993]). "[I]n the context of cooperative dwellings, the business judgment rule provides that a court should defer to a cooperative board's determination 'so long as the board acts for the purposes of the cooperative, within the scope of its authority and in good faith' " (40 W. 67th St. v Pullman, 100 NY2d 147, 153 [2003] [brackets omitted], quoting Matter of Levandusky v One Fifth Ave. Apt. Corp., 75 NY2d 530, 538 [1990]). Unequal treatment of shareholders is sufficient to overcome the directors' insulation from liability under the business judgment rule (see Meadow Lane Equities Corp. v Hill, 63 AD3d 699, 700 [2009]), and a director who participates in the commission of a tort committed by the board may be held individually liable (see Fletcher v Dakota, Inc., 99 AD3d 43, 47 [2012]; cf. Cohen v Kings Point Tenant Corp., 126 AD3d 843, 845 [2015]; Hill v Murphy, 63 AD3d 680, 681 [2009])." (Stinner v Epstein, 162 AD3d 819, 820-821 [2d Dept 2018].)
"However, the individual directors cannot be held liable for breach of fiduciary duty absent an allegation of tortious conduct separate from the" act complained of (Kravtsov v Thwaites Terrace House Owners Corp., 267 AD2d 154, 155 [1st Dept 1999]).
"Although unequal treatment of shareholders is sufficient to overcome the directors' insulation from liability under the business judgment rule, individual directors and officers may not be subject to liability absent the allegation that they committed separate tortious acts (see Konrad v 136 E. 64th St. Corp., 246 AD2d 324, 325-326 [1998]; DeCastro v Bhokari, 201 AD2d 382, 383 [1994]). Here, because the first seven causes of action are devoid of allegations that any of the defendants acted tortiously other than in their capacity as Board members, the Supreme Court properly concluded that those causes of action should be dismissed pursuant to CPLR 3211 (a) (7) (see Meadow Lane Equities Corp. v Hill, 63 AD3d 699 [2009] [decided herewith]; Pelton v 77 Park Ave. Condominium, 38 AD3d 1, 9-10 [2006]; Brasseur v Speranza, 21 AD3d 297, 298 [2005]; Konrad v 136 E. 64th St. Corp., 246 AD2d at 326; DeCastro v Bhokari, 201 AD2d at 383)." (Hill v Murphy, 63 AD3d 680, 681 [2d Dept 2009]; see Tucciarone v Hamlet on [*5]Olde Oyster Bay Homeowners Assn., Inc., 154 AD3d 898, 900-901 [2d Dept 2017] [defendants established prima facie that individual defendants did not commit any tortious acts outside the scope of their authority as board members].)
Defendant's second counterclaim, alleging breach of fiduciary duty and disparate treatment by the individual board member plaintiffs, does not identify any actions taken by individual Plaintiffs other than in their capacity as board members. Therefore, a cause of action cannot lie against them in their individual capacities. Any further arguments of Plaintiffs regarding the second counterclaim are academic.
Attorneys' Fees, Costs, and Disbursements
Plaintiffs claim the right to reasonable attorney's fees, costs and disbursements pursuant to the co-op proprietary lease and 22 NYCRR 130-1 (see NYSCEF Doc No. 52, Plaintiffs' mem law at 17-19). Defendant correctly points out that this branch of Plaintiffs' motion is premature (see NYSCEF Doc No. 60, Defendant's mem law at 11).
Conclusion
It is hereby ORDERED that Plaintiffs' motion to strike Defendant's counterclaims and for attorneys' fees, costs, and disbursements is GRANTED ONLY TO THE FOLLOWING EXTENT:
(1) Paragraph 210 of Defendant's answer with respect to the first counterclaim, sounding in breach of contract, is stricken.
(2) Defendant's second counterclaim, sounding in breach of fiduciary duty and shareholder discrimination, is stricken.
(3) Plaintiffs' motion is OTHERWISE DENIED.

Footnotes

Footnote 1:Transcripts may be procured from the court reporter (see Matter of Lewandowski v Office of Ct. Admin., 173 Misc 2d 335 [Sup Ct, Albany County 1997]).