OPINION OF THE COURT
Lewis Bart Stone, J.
Petitioners Okslen Acupuncture PC. and Nicolo Genovese commenced this proceeding by notice of petition, dated December 10, 2008, pursuant to Civil Practice Law and Rules article 78, against respondents Eric R. Dinallo, as Superintendent of Insurance of the State of New York (the Superintendent), National Insurance Crime Bureau (NICE), and State Farm Mutual Automobile Insurance Company, AutoOne Insurance *639 Company, and General Assurance Company (the carriers), seeking to order respondents to take certain actions as specified in the petition.
Petitioners ask this court to order the Superintendent to “thoroughly audit and investigate the claims practices of [the carriers] . . . and take all appropriate action to remedy any and all infirmities, deficiencies and misconduct” and to publish such findings. Petitioners also ask this court to order NICE and certain agents to cease all investigative activities until NICE is licenced under General Business Law § 70.
Petitioners also ask this court to order the carriers “to take all action necessary” to insure that all investigators who are members of special investigative units be qualified under 11 NYCRR 86.6 and to provide a list of all nonqualified investigators, and to order State Farm Mutual Automobile Insurance Company to conduct its investigations in a certain manner and conduct its medical examinations “purely on the application of medical science to the patient being examined and not as a pretext to deny a claim for which the decision to deny has already been made and to document its decisions.”
On February 13, 2009, the Superintendent cross-moved to dismiss the petition as against him on the ground that under CPLR article 78 mandamus may not be used to compel him to take discretionary enforcement action.
On March 12, 2009, the carriers jointly cross-moved to dismiss the petition as against them pursuant to CPLR 3211 (a) (3) on the ground that the petitioners have no legal capacity to sue and pursuant to CPLR 3211 (a) (7) on the ground that the petition fails to state a cause of action against them.
On March 13, 2009, NICE also cross-moved to dismiss the petition as against it pursuant to CPLR 3211 (a) (2) on the ground that this court lacks subject matter jurisdiction over the claim asserted against NICE, pursuant to CPLR 3211 (a) (3) on the ground that petitioners have no legal capacity to sue and pursuant to CPLR 3211 (a) (7) also on the ground that the petition fails to state a cause of action against NICE.
Petitioners responded to the three cross motions and this court conducted a hearing of the parties to clarify certain issues.
This dispute arises out of an aspect of New York’s No-Fault Insurance Law program (Insurance Law § 5101 et seq.) (the No-Fault Law) and regulations promulgated thereunder, which
*640 require prompt payment by carriers of valid claims and expenditures for the medical treatment of injured persons covered by the No-Fault Law. Petitioner Okslen is a New York professional corporation licensed to practice acupuncture and Genovese is alleged to be a person whose injury generated claims for reimbursement for acupuncture services under the No-Fault Law. Petitioners allege that the carriers, which write policies of no-fault insurance, systematically improperly challenge claims submitted by petitioners for acupuncture services and in such challenges employ unqualified and unlicensed special investigators to review claims, make unjustified document demands and utilize medical examinations which do not base their determination on medical evidence. Petitioners further assert that “NICE, which is a not-for-profit organization funded by the insurance industry to coordinate efforts to reduce insurance fraud by aiding in the prevention and prosecution of insurance frauds,” is not, as it is required to be, licensed as a private investigator by the New York Department of State. Petitioners further request this court to order the Superintendent “to stop the illegal use of the NICE by insurance companies which insurance companies the Superintendent regulates.”
Petitioners initially sought relief against the respondents[1] through a class action in the New York Supreme Court, County of New York, on June 2, 2008, index No. 601655/08. Acting under a recently enacted federal law known as the Class Action Fairness Act, relating to class actions against certain entities engaged in interstate commerce, the defendants in such action removed the action to the United States District Court for the Southern District of New York (08 Civ 5650). Finding themselves in the federal courts, petitioners voluntarily discontinued such action and thereafter commenced this proceeding under CPLR article 78, asserting various different theories of entitlement to relief.[2]
As each respondent has submitted a cross motion to dismiss, praying for additional time to answer the petition if its cross motion is not granted, issue has not yet been joined on the merits of this dispute. Accordingly, this decision and order only addresses solely the various cross motions, and not the merits of any of petitioners’ underlying claims.
*641 The NICB Cross Motion
In its cross motion to dismiss, NICB challenges petitioners’ standing to maintain this proceeding, asserts that CPLR article 78 proceedings may not proceed against a private entity, and that NICB is not required to be licensed as a private investigator under New York law.
CPLR article 78 provides an avenue for a court to review the action or inaction of a “body.” NICB initially asserted that for CPLR article 78 review, the body must be a government or governmental agency. While the “body” whose acts or nonacts are challenged in CPLR article 78 proceedings are usually governmental agencies, CPLR article 78 review also permits the courts to review acts or failures to act of certain nongovernmental organizations under certain circumstances. NICB has conceded such in its reply memorandum of law.
Examples of where CPLR article 78 review has been found to apply to nongovernmental agencies include Matter of Levandusky v One Fifth Ave. Apt. Corp. (75 NY2d 530, 536 [1990] [the Court noted that respondent housing cooperative corporation was a “quasi-government”]); Matter of Carr v St. John’s Univ. (34 Misc 2d 319, 321 [Sup Ct, Kings County 1962] [characterizing that university as “a quasi-public institution”], revd on other grounds 17 AD2d 632 [2d Dept 1962] [relying upon the implied contractual relationship between a university and student]); Matter of Sines v Opportunities For Broome (156 AD2d 878 [3d Dept 1989] [involving employee-employer relationship and whether a not-for-profit employer followed its internal rules]); Matter of Paglia v Staten Is. Little League (38 AD2d 575 [2d Dept 1971] [authority of an organization incorporated by Congress]); and Goldman v White Plains Ctr. for Nursing Care, LLC (9 Misc 3d 977 [2005] [article 78 applied to nursing homes that were a not-for-profit corporation and limited liability companies, where nursing homes became quasi-governmental bodies when they accepted a charter pursuant to state law]).
These uncommon exceptions, however, are limited to cases where the dispute is between a member or employee of the nongovernmental organization and the organization itself and where the organization has powers, akin to a government, to affect the rights of a constituent member, employee or persons who, by government mandate, are subject to the powers of the body. In such cases, an affected person may invoke CPLR article 78 to review the action or nonaction of the “body.”
*642 Here, NICE is not a governmental body and no petitioner is a member or employee of NICE or is otherwise subjected by governmental mandate to employment or regulation by NICE. Accordingly, petitioners may not proceed against NICE in a proceeding under CPLR article 78, whatever the merits of any claim or remedy that petitioners may assert against NICE in a plenary action or other special proceeding. Because the petition must be dismissed against NICE for this reason, this decision and order need not and does not address whether NICE or its employees must be licensed under New York law as private investigators.[3] Accordingly, this petition must be dismissed as against NICE.
The Carriers’ Cross Motion
The carriers’ cross motion also asserts multiple claims for relief. However, the same reason why this court must dismiss the petition as against NICE as discussed above applies equally, if not a fortiori, to the carriers’ cross motion. The limited exception of the availability of CPLR article 78 review of decisions of certain nongovernmental bodies is wholly unavailable to review petitioners’ claims against the carriers, as the carriers are business entities and petitioners are not shareholders, nor have they any special relationship with the petitioners. Their relationship is commercial. While the carriers may be subject to suit in a civil action for the alleged transgression asserted by petitioners, CPLR article 78 is unavailable to enforce business claims. Accordingly, the carriers’ cross motion to dismiss is granted and the petition is dismissed as against them.
The dismissal of this CPLR article 78 proceeding against the carriers and NICE is neither a dismissal of petitioners’ claims alleged in the petition on the merits nor a recognition that such claims have merit. It is merely a recognition that CPLR article 78 review, with its short statute of limitations, limited discovery and summary nature, is unavailable to petitioners as a medium in which their claims against the carriers and NICE may be asserted, adjudicated and resolved.
That other procedural routes for the resolution of such claims (at least as against the carriers) are available is clear from the history of this dispute. Petitioners originally sought to assert
*643 their claims through a class action suit in Supreme Court, an appropriate forum in which to commence such an action to test the validity and merits of petitioners’ claims. As a plenary action, such procedural mode is not limited by the strict procedural limitations of CPLR article 78. Further, petitioners cannot be heard to complain that when Congress, acting under its power to regulate interstate commerce, enacted a law providing authority for the defendants in that action to remove such action to the federal court, they were deprived of any substantive right as such removal merely changed the forum for the resolution of the dispute and not the law applicable to its resolution. To the extent federal law applies to any aspect of the dispute, federal law would supercede state law in both federal courts and the Supreme Court; to the extent federal law did not apply to such aspect, the federal court would be required to apply the same state law in resolving the dispute as would the Supreme Court. (Erie R. Co. v Tompkins, 304 US 64 [1938].)
While courts should be mindful to avoid closing access for technical reasons to litigants seeking to assert their claims on the merits, such concern is absent here. Petitioners were not prevented from continuing to assert the merits of their class action claims, but instead, voluntarily discontinued their action once it had been removed to the federal court. While under federal procedure such voluntary discontinuance was permissible, the reason proffered to this court for such discontinuance, that petitioners’ counsel was unfamiliar with federal practice, was underwhelming. As evidenced by the reports of cases in the Federal Supplement, there are many federal judges in the Federal District Court in New York and numerous cases decided by such courts each year. It is thus clear that there are a significant number of attorneys available locally whom petitioners’ counsel could retain to fill in the gaps of his experience. In any event, even if such reason was the real reason for the discontinuance, counsel’s problems do not support a concern as to court access.
Superintendent’s Cross Motion
The reasons set forth above why the petition must be dismissed as against the carriers and NICE do not apply to the Superintendent, who acts on behalf of a governmental agency. However, the fact that certain acts or omissions of the Superintendent may be amenable to challenge pursuant to CPLR article 78 does not render every act or omission of the Superintendent subject to challenge thereunder.
*644 Recognizing that in the administration of laws and governmental policies, governmental agencies must exercise, their discretion, and that it is appropriate for them to do so without let or hindrance, the court’s role in reviewing the acts or omissions of a governmental agency under article 78 is effectively limited to those instances where the action or omission exceeds the permitted parameters of discretion conferred by law upon the governmental agency. The provisions of CPLR article 78 and case law thereunder define this interface between governmental agencies and this court.
Petitioners seek judgment compelling the Superintendent to take certain actions. Under CPLR article 78, such a remedy, that of mandamus, is available but only under limited circumstances. In Silverman v Lobel (163 AD2d 62, 62 [1st Dept 1990]), the First Department noted that under CPLR article 78 “[t]he remedy of mandamus is an extraordinary remedy which lies only to compel the performance of purely ministerial acts where there is a clear right to the relief sought.” As a corollary, the Court of Appeals noted in New York Civ. Liberties Union v State of New York (4 NY3d 175, 184 [2005]):
“Mandamus is available . . . only to enforce a clear legal right where the public official has failed to perform a duty enjoined by law . . . [M]andamus does not lie to enforce the performance of a duty that is discretionary, as opposed to ministerial . . . A discretionary act involve [s] the exercise of reasoned judgment which could typically produce different acceptable results whereas a ministerial act envisions direct adherence to a governing rule or standard with a compulsory result” (internal quotation marks omitted).
Here, petitioners seek to compel the Superintendent “[t]o thoroughly[4] audit and investigate the claims practices of State Farm Mutual Automobile Insurance Company, AutoOne Insurance Company and General Assurance Company and take all appropriate action to remedy any and all infirmities, deficiencies and misconduct as described below,[5] and publish such findings.”
*645 At the core of this dispute is a claim that the carriers are not settling claims of petitioners in a fair and appropriate manner, and that the petitioners seek to have this court order the Superintendent to order the carriers to do so. In considering the availability of mandamus as a remedy and in turn whether the Superintendent is mandated by law to cause the carriers to modify their behavior, the court must make inquiry into the Superintendent’s powers vis-á-vis the claims settlement practices of carriers.
Insurance Law § 2601 is the sole authority in the Insurance Law which authorizes the Superintendent to intervene into claims settlement practices of carriers. Insurance Law § 2601 was derived from prior Insurance Law § 40-d which, by Laws of 1970 (ch 296), first granted the Superintendent the powers to address such practices as a part of the Governor’s 1970 program of consumer protection. As the Governor’s Approval Memorandum noted, prior to said change, settlement practices were governed by private contract law, and the purpose of the change was to allow the Superintendent to determine which carriers were comparatively egregious in their claims settlement practices and to give the Superintendent the discretion to take appropriate action against those carriers whose claims settlement practices substantially exceeded industry norms, noting, “the bill would leave to the courts the settlement of individual disputes.” (1970 McKinney’s Session Laws of NY, at 3092.) Thus, the Superintendent has no jurisdiction to intervene to mandate the settlement of any particular claim dispute. While the Superintendent has been granted the exclusive jurisdiction to pursue those claims wherein a carrier engages in a pattern of improper settlement practices, the exercise of such power, both as to which, if any, carrier to pursue, and how to pursue a carrier and craft an appropriate response, is left to the discretion of the Superintendent.[6] (See e.g. Mavroudis v Statewide Ins. Co., 134 AD2d 243 [2d Dept 1987].)
Mandamus to compel is also inappropriate where a petitioner seeks to compel a government official to engage in an ongoing course of regulatoiy enforcement. (See Matter of Community Ac *646 tion Against Lead Poisoning v Lyons, 43 AD2d 201, 202-203 [3d Dept 1974], affd 36 NY2d 686, 688 [1975] [denying mandamus to compel the Commissioner of Health to investigate and take ongoing regulatory and enforcement action relating to lead paint hazards was denied on grounds that Court was loathe to interfere with the executive department of the government in the exercise of its official duties unless there’s a violation of the law]; Matter of Perazzo v Lindsay, 30 AD2d 179 [1st Dept 1968] [denying mandamus to compel a municipal government to take action to enforce existing regulations relating to coffee houses on policy grounds that dissuade courts from reviewing the exercise of discretion by public officials in the absence of a clear violation of some constitutional mandate]; Matter of National Equip. Corp. v Ruiz, 19 AD3d 5 [1st Dept 2005] [where the duty sought to be compelled involves the exercise of discretion or judicial power, mandamus may not be employed to direct the decisionmaker to decide in a particular manner].)
Accordingly, as the Superintendent’s power to act against any carriers for their claims settlement practices is at the discretion of the Superintendent, mandamus will not lie.
The same is even more true of petitioners’ prayer to require the Superintendent to audit the carriers, and publish the findings, even if no further action is taken against them.
This requested “audit” also requires substantial discretion to be exercised by the Superintendent. For example, while an “audit” may be a defined term to an accountant, at least when applied to a profit and loss statement for a period,[7] the term “thoroughly audit and investigate” as applied in this context requires an exercise of discretion as to time, place, scope, and items to investigate, including whether sampling or a universal review is required, as to how far to investigate and what is thorough. Further, a mandate “to remedy ... all infirmities, deficiencies and misconduct” is certainly not ministerial as the Superintendent has substantial discretion as a regulator to determine what constitutes an “infirmity,” a “deficiency” and “misconduct.”
Thus, as the relief sought by petitioners is unavailable under CPLR article 78, the Superintendent’s cross motion to dismiss the petition as against him must also be granted.
*647 The cross motions are all granted and the petition is dismissed.

. Certain additional plaintiffs and defendants were named.

. At oral argument, petitioners’ counsel advised this court that the reason he discontinued the class action was because he was unfamiliar with federal procedure.

. The court notes, as an aside and dicta, that even assuming petitioners had standing and had proceeded by proper procedure, petitioners’ failure to name the Department of State, the licensing agency for private investigators, as a party may have required the dismissal of petitioners’ petition as against NICE.

. The split infinitive is set forth in petitioners’ petition, and is not this court’s locution.

. Such deficiencies allegedly relate to the claims settlement practices and personnel policies of the carrier respondents which are alleged to be in violation of law or regulations.

. The petition does not assert that the carriers’ claims settlement practices are materially worse than claims settlement practices of other carriers. As Insurance Law § 2601 was intended to grant the Superintendent the power to address the claims settlement practices of those carriers whose claims settlement practices were materially inferior to industry norms, the failure of the petition to so assert cannot support any view that the Superintendent had an obligation to investigate the specific carriers named in this petition.

. An accountant’s audit of financial information under generally accepted accounting procedures will define the parameters of what is to be done.