ROTHENBERG, J.
Great Lakes Reinsurance (U.K.) PLC (“Great Lakes”) appeals from the denial of its motion for a directed verdict as to Joe Harry Branam, Sr.’s (“JHB”) breach of contract claim.[1] Because we conclude that JHB failed to present sufficient evidence to support his breach of contract claim, we reverse and remand for entry of judgment in favor of Great Lakes.

THE DAMAGE TO THE JOE COOL

On September 22, 2007, the Joe Cool, a charter fishing boat owned by Deep Sea Miami, Inc. (“Deep Sea Miami”) and insured by Great Lakes, was hijacked. The hijackers murdered all four members of the vessel’s crew, including Jake Branam, the sole officer, director, and shareholder of Deep Sea Miami, leaving the Joe Cool’s decks and cabin soaked with blood and damaged by gunfire. The hijackers threw the victims’ bodies overboard and attempted to abscond to Cuba on the vessel. According to JHB’s expert,[2] on their way to Cuba, the hijackers caused extensive damage to the Joe Cool’s engines by running them at full throttle continuously for six or seven hours. Before reaching Cuban waters, the hijackers ran out of gas, and eventually abandoned the Joe Cool in a life raft.
Shortly after the hijacking, the Coast Guard recovered the Joe Cool off the coast of Cuba and towed it back to Miami. During the tow, the Coast Guard failed to secure the Joe Cool’s props. JHB’s expert opined that the failure to secure the props caused extensive damage to the Joe Cool’s transmissions. The record reflects that during the tow, the vessel’s hull, steering arm, and various other components were also damaged.
After the vessel arrived in Miami, the Federal government conducted a two-week investigation aboard the Joe Cool, during which the investigators disassembled the vessel’s electronics and much of its interi- or. On October 4, 2007, the Coast Guard released the Joe Cool to Jeff Branam, Jake Branam’s uncle, who docked it in the water behind his Star Island residence for the next three years.[3] While docked, Jake Branam maintained the vessel’s bilge pumps and battery charger in working *299 order, but did not otherwise perform any maintenance on the vessel.

THE LITIGATION AND INSURANCE POLICY DEMANDS

On November 1, 2007, JHB filed the instant action against Jake Branam, Deep Sea Miami, and others to establish and foreclose on an equitable lien on the Joe Cool. Jeff Branam thereafter intervened as an additional lien claimant.
At that time, no one had authority to file an insurance claim for the damage done to the Joe Cool. The named insureds in the insurance policy were Jake Branam and Deep Sea Miami. But Jake Branam was deceased and, at that time, no one had been named the personal representative of his estate. Further, because Jake Branam was Deep Sea Miami’s sole officer, director, and shareholder, and because no one had been named conservator for Deep Sea Miami, no one had the authority to act on the company’s behalf. Finally, no loss payee was designated in the insurance contract.
Thus, on October 8, 2008, the trial court entered an order authorizing JHB and Jeff Branam to jointly file an insurance claim on the Joe Cool, stating:
[I]n light of the death of the principals of Deep Sea Miami, Inc., there appears to be no one presently authorized to file an insurance claim on behalf of the owner which was insured at the time of the loss. Accordingly, it is hereby
ORDERED and ADJUDGED that:
1. Plaintiff [JHB] and Intervenor Jeffery Branam (jointly, through their respective counsel), as lien claimants against the vessel, are hereby authorized to file a claim for damage to the vessel under aforesaid policy....
(emphasis added).
On the same day, JHB’s attorney, Ms. Inger Garcia, issued a policy limits demand of $250,000 to Offshore Risk Management, the agent of the insureds rather than the insurer, Great Lakes. According to the testimony of Offshore Risk Management’s representative Peter Shaw, Offshore Risk Management transmitted the demand to Great Lakes the following day. The demand, however, apparently never made its way to its intended recipient at Great Lakes. In any event, Ms. Garcia admitted that in making the demand, she represented only JHB, and did not have permission to file the claim on Jeff Bra-nam’s behalf.
On May 17, 2009, after being advised that no claim had been received by Great Lakes, Ms. Garcia issued a second $250,000 policy limits demand directly to Great Lakes. Again, in making this second demand, Ms. Garcia admitted that she represented only JHB. Great Lakes refused to adjust the claim until it received documentation demonstrating that JHB was authorized to act unilaterally on behalf of the insureds, noting that JHB had not been appointed the receiver for Deep Sea Miami, nor the personal representative of Jake Branam’s estate. JHB did not provide such documentation. Indeed, as a stranger to the policy, he could not.
On June 4, 2010, as part of a settlement agreement, Jeff Branam assigned his lien claim interest in the Joe Cool to JHB. Then, on August 9, 2010, JHB, by and through his new counsel, Jerome A. Piv-nik, issued a third $250,000 policy limits demand. Like Ms. Garcia, in making this demand, Mr. Pivnik represented only JHB. Upon receiving this demand, Great Lakes again requested that JHB provide documentation establishing his authority to act unilaterally on behalf of the insureds. Still, JHB provided no such documentation.
*300 In the meantime, Genny Van Laar was appointed personal representative of Jake Branam’s estate. On October 5, 2010, the Joe Cool was sold for its salvage value of $60,000. Then, on November 22, 2010, Genny Van Laar, in her capacity as personal representative, assigned to JHB the rights to the Joe Cool and the insurance policy. JHB, however, did not notify Great Lakes of this assignment until March 4, 2011, when JHB impleaded Great Lakes into the lawsuit and attached the assignment to the complaint, claiming breach of contract for denying his previously filed claims. After learning of the assignment, Great Lakes offered to settle JHB’s claim for $30,000 on April 14, 2011, and again on May 17, 2011. JHB, however, rejected the first offer, and did not respond to the second one.
A two day bench trial began on January 24, 2012. The crux of JHB’s case was that Great Lakes “effectively” denied coverage by refusing to pay or adjust his claims in a reasonable time period, and thereby breached the insurance contract.
At the close of JHB’s case-in-chief, Great Lakes moved for a directed verdict, arguing, among other things, that JHB lacked the authority to file the insurance claims at issue and, therefore, failed to prove that Great Lakes had breached the insurance contract as a matter of law. The trial court disagreed, determining that the trial court’s October 8, 2008, order provided JHB with the authority to file the policy claims. Further, relying on section 627.70131(5)(a), Florida Statutes (2009), which sets forth a ninety-day time limitation for the payment or denial of certain types of insurance claims, the trial court determined there was sufficient evidence to establish that Great Lakes breached the insurance contract by not adjusting the claim within ninety days of the October 8, 2008, demand, or, if that demand was invalid because it was not submitted directly to Great Lakes, within ninety days of the subsequent May 17, 2009, claim, which was submitted directly to Great Lakes.
[Counsel for JHB]: The date that Your Honor just referenced, the October 8th, 2008, that was an on-line submission by Ms. Garcia to Offshore Risk Management. Great Lakes never got that, and that’s clearly been the testimony in the court....
[The Trial Court]: Okay. Well, it’s still more than 90 days since May, 2009.
[[Image here]]
[The Trial Court]: Well, anyway, I accept the Defendant’s view that there was no one with authority before October 8th, 2008. On October 8th, 2008, the circuit court gave authority....
[P]erhaps you [can] make an argument ... that the October 8th ... notice was defective in its form because of who it was sent to.
But the May of 2009 notice is undisputed. So, and I don’t think it really changes the case if I use which date I use.
So the court does respectfully deny the motion for a directed verdict.
After Great Lakes presented its defense, the trial court ruled in favor of JHB, determining that Great Lakes breached the insurance contract and that the Joe Cool was a constructive total loss, and calculating damages at $162,000. The trial court thereafter denied Great Lakes’s motion for a new trial or alternatively to amend the judgment, and entered final judgment in favor of JHB. This appeal followed.

ANALYSIS

The main issue presented on appeal is whether JHB presented sufficient evidence to withstand Great Lakes’s motion for a directed verdict. JHB premised his case *301 on the notion that Great Lakes “effectively” denied coverage by refusing to adjust JHB’s claims within ninety days of their submission, and therefore breached the insurance contract. JHB, however, was a stranger to the insurance policy. Thus, to survive a motion to dismiss, JHB was required to present evidence establishing that the claims he filed were valid or otherwise triggered Great Lakes’s contractual obligations. Because he did not, we reverse the trial court’s denial of Great Lakes’s motion for a directed verdict. We also note that the ninety-day time limitation cited by JHB and relied on by the trial court is inapplicable to the instant insurance policy.
A. JHB Did Not Have Authority to File Insurance Claims on the Joe Cool on October 8, 2008, May 17, 2009, or August 9, 2010.
JHB was neither a named insured nor a loss payee under the insurance policy. He was likewise neither the personal representative of Jake Branam’s estate nor the conservator for Deep Sea Miami. Thus, prior to receiving the assignment of the policy rights, JHB was a complete stranger to the insurance policy, and lacked authority to file claims thereunder. See Lauren Kyle Holdings, Inc. v. Heath-Peterson Constr. Corp., 864 So.2d 55, 58 (Fla. 5th DCA 2008) (noting that “[a]n assignment is a transfer of all the interests and rights to the thing assigned. The assignee thereafter stands in the shoes of the assignor and may enforce the contract against the original obligor in his own name”) (emphasis added) (internal citations omitted). The record reflects that JHB was assigned the policy rights on November 22, 2010. Thus, the claims filed by JHB before this assignment—on October 8, 2008, May 17, 2009, and August 9, 2010,—were without legal force.
JHB contends that the combination of the previously-filed claims and the subsequent notice of assignment ultimately triggered Great Lakes’s contractual obligations. It must be kept in mind, however, that any such contractual obligations could not have been triggered until the moment notice of the assignment was provided. See Richard A. Lord, Williston on Contracts § 74:56 (4th ed. 2012) (noting that “although ‘notice to an obligor is not essential to the validity of an assignment as between an assignor and an assignee, until such notice has been given, the obli-gor may continue to regard the assignor as the owner of the interest or thing assigned, whether it be a leasehold; a contract to pay rent; a lien or charge against property; or otherwise’ ”). Since the notice of the assignment was provided simultaneously with the filing of the breach of contract claim on March 4, 2011, it cannot be said that, prior to the filing of the lawsuit, Great Lakes had ever denied a valid claim that would have given rise to JHB’s breach of contract action.
In ruling to the contrary, the trial court noted that prior to the assignment, on October 8, 2008, the trial court issued an order allowing JHB and Jake Branam to jointly file an insurance claim for the damage to the Joe Cool. The trial court also observed that, pursuant to that order, JHB’s attorney, Ms. Garcia, submitted a claim to Offshore Risk Management on October 8, 2008, and, later, on May 17, 2009, submitted a claim directly to Great Lakes.[4] Additionally, JHB’s subsequent attorney, Mr. Pivnik, submitted a policy *302 demand to Great Lakes on August 9, 2010. The trial court concluded that since these claims were filed under the authority of the October 8, 2008, order, they triggered Great Lakes’s contractual responsibilities even before JHB was assigned the policy rights.
This reasoning is misguided because no joint claim was ever filed, as required by the October 8, 2008, order. Ms. Garcia testified at trial that in filing the claims on October 8, 2008, and May 17, 2009, she represented only JHB, did not file the claims on Jeff Branam’s behalf, and did not have permission to do so.
Q. Ms. Garcia, isn’t it true that Jeffrey Branam or his attorney, David Friedman, never gave you authority to act on their behalf in filing any insurance claim? Isn’t that true, ma’am?
[[Image here]]
A. I was working with his lawyer so I’m not sure how to answer that except to say we were working together to file the claim.
Q. Did he give you permission to file a claim on his behalf?
A. We filed it on behalf of Deep Sea. So, no, I didn’t file on behalf of Jeffrey because he wasn’t the assured (sic)....
The record reflects that Mr. Pivnik likewise represented only JHB when he filed the August 9, 2010, policy limits demand.
In fact, after these claims were filed, Jeff Branam informed Great Lakes that he wanted nothing to do with them, as, in his view, they may have been “bogus.”
Q: Now, did there come a time when you became aware of Inger Garcia making the claim against the insurance policy?
A: Vaguely, yes.
Q: Were you ever associated, you Jeff Branam, or your mother, so far as you know, ever associated with making the claim on the insurance policy for physical damage to the boat?
A. Never made a claim.
Q. And why not?
A. Didn’t own the boat.
Thus, even assuming the October 8, 2008, order was valid, the order’s requirement that the claim be jointly filed was never satisfied. Accordingly, the claims purportedly filed pursuant to the October 8, 2008, order could not have triggered Great Lakes’s contractual obligations.
JHB notes that it attached the assignment of Jeff Branam’s lien claim on the Joe Cool to the August 9, 2010, demand, and argues this assignment authorized him to file a claim without JHB. This assignment, however, merely granted to JHB Jeff Branam’s rights as a lien claimant, and did not grant him any rights under the policy. Perhaps, upon receiving this assignment, JHB could have persuaded the trial court to enter an order enabling him to file a claim without JHB, as the trial court seemed inclined to issue such orders. JHB, however, made no such request. Thus, without the policy rights and without a trial court order authorizing him to file a claim unilaterally, JHB remained a stranger to the insurance policy without authority to file a claim thereunder.
B. The Ninety-Day Time Limitation Relied on by the Trial Court is Inapplicable.
Contrary to the trial court’s determination, there is no ninety-day time limitation governing this insurance contract. Importantly, the insurance policy does not contain a time limitation for the adjustment of a claim. Rather, the ninety-day period relied on by the trial court was derived from section 627.70131(5)(a), Florida Statutes, which states:
*303 Within 90 days after an insurer receives notice of a property insurance claim from a policyholder, the insurer shall pay or deny such claim or a portion of the claim unless the failure to pay such claim or a portion of the claim is caused by factors beyond the control of the insurer which reasonably prevent such payment....
On its surface, section 627.70131(5)(a) would seem to govern the instant set of facts. Upon closer examination, however, it is clearly inapplicable for two reasons. First, the plain language of section 627.70131(4) specifies that “[f|or purposes of this section, the term ‘insurer’ means any residential property insurer.” Because Great Lakes in this situation acted as a marine insurer rather than a residential property insurer, it was not subject to this section’s ninety-day requirement.[5]
Second, and more importantly, pursuant to the choice of law provision in the contract, the dispute regarding the governing time frame for the adjustment of claims is governed by New York law rather than Florida law. The choice of law provision states:
It is hereby agreed that any dispute arising hereunder shall be adjudicated according to well established, entrenched principles and precedents of substantive United States Federal Admiralty law and practice but where no such well established, entrenched precedent exists, this insuring agreement is subject to the substantive laws of the state of New York.
Because this dispute arises under the contract, and the parties agree that there are no relevant well-established, entrenched principles and precedents of substantive Admiralty law, New York law, rather than Florida law, applies. Thus, the trial court erred in determining that a Florida provision governed this dispute.
C. The Thirty-Day and Fifteen-Day New York Time Limitations Cited by JHB are Likewise Inapplicable.
JHB next argues that New York law is even more stringent than Florida law with respect to the timeframe for adjusting claims. In support, JHB cites to New York Insurance Law section 2601, (McKinney 2009), for the proposition that an insurer must “acknowledge with reasonable promptness pertinent communications as to claims arising under its policies,” and that “[ajfter receiving a properly executed proof of loss, the insurer shall advise the claimant of acceptance or denial of the claim within thirty working days.” This provision, however, is inapplicable in a breach of contract context, as it is well settled New York law that section 2601 “grants no private right of action to an insured, but merely permits the New York State Department of Insurance to punish violators.” Gucciardo v. Reliance Ins. Co., 84 F.Supp.2d 399, 403 (E.D.N.Y.2000) (citation omitted); see also Okslen Acupuncture P.C. v. Dinallo, 25 Misc.3d 637, 884 N.Y.S.2d 804, 811 (N.Y.Sup.Ct.2009).
In addition, JHB cites to the New York Compilation of Codes, Rules & Regulations title 11, section 216.6(c) (2009), for the proposition that New York law’s time- *304 frame is actually fifteen days. Section 216.6(c) states:
Within 15 business days after receipt by the insurer of a properly executed proof of loss and/or receipt of all items, statements and forms which the insurer requested from the claimant, the claimant, or the claimant’s authorized representative, shall be advised in writing of the acceptance or rejection of the claim by the insurer.
N.Y. Comp. Codes R. & Regs. tit. xi, § 216.6(c). Like section 2601, however, section 216.6(c) is inapplicable by its own terms. Section 216.2(a) states that Part 216 of the New York Compilation of Codes, Rules and Regulations, which includes section 216.6(c), “shall not be applicable to ... ocean marine insurance issued pursuant to the provisions of section 1113(a)(20) and (21).” Because this policy was clearly a marine insurance policy issued pursuant to the provisions of section 1113(a)(20) and (21), the limitations set forth in section 216.6(c) are inapplicable. See N.Y. Ins. Law § 1113(a)(20) (McKinney 2012) (authorizing “insurance against any and all kinds of loss of or damage to: (A) Vessels, hulls, craft ... in respect to, appertaining to or in connection with any and all risks or perils of navigation, transit, or transportation, including war risks, on or under any seas or other waters....”); N.Y. Ins. Law § 1113(a)(21) (McKinney 2012) (authorizing “insurance against, or against legal liability of the insured for, loss, damage or expense arising out of, or incident to, the ownership, operation, chartering, maintenance, use, repair or construction of any vessel, craft or instrumentality in use in ocean or inland waterways....”). Thus, the time limitations relied on by the trial court and cited to by JHB are inapplicable.
In sum, every provision of Florida and New York law cited by JHB purporting to set a strict temporal limitation on the adjustment of claims is inapplicable, and the trial court therefore erred in relying on such limitations to conclude that Great Lakes breached the insurance contract.
D. Conclusion
In this case, the record reflects that JHB issued various insurance policy demands upon Great Lakes under Jake Bra-nam’s and Deep Sea Miami’s insurance policy. Upon receiving these claims, Great Lakes requested that JHB submit documentation establishing his authority to act on behalf of the insureds. JHB, however, had no such authority, and therefore could not submit the requested documentation. On this basis, Great Lakes refused to adjust JHB’s claims. The record does not support JHB’s breach of contract claim. We therefore reverse the trial court’s denial of Great Lakes’s motion for a directed verdict, and remand for entry of judgment in favor of Great Lakes.
Reversed.

.Great Lakes also appeals the entry of final judgment in favor of JHB; the denial of Great Lakes's motion for new trial or alternatively motion to amend the judgment to recalculate damages; and award of prejudgment interest from the date of the hijacking. Our reversal of the denial of Great Lakes's motion for directed verdict, however, renders these issues moot. We therefore limit our discussion to the denial of the motion for directed verdict.

. Mr. Kwederas concluded the engines needed to be overhauled. He later admitted, however, he neither conducted a test nor thoroughly inspected the engines in so concluding.

. Jeff Branam arranged for the vessel to be driven back to his Star Island residence. Great Lakes’s expert testified that the fact that the vessel was driven to Jeff Branam's home demonstrates that at least one of the engines and transmissions was not substantially damaged.

. As we explained above, Mr. Pivnik also submitted a third policy demand on August 9, 2010. But, because the trial court determined that the May 17, 2009, demand was valid, in its view the subsequent claim filed was irrelevant.

. We also note that the ninety-day limitation set forth in section 627.7013 l(5)(a) is triggered only upon the insurer’s receipt of "a property insurance claim from a policy holder.” (emphasis added). As we have explained at length, JHB was not a policy holder, and did not stand in the shoes of a policy holder until receiving the assignment of policy rights on November 22, 2010, which was after JHB filed his claims. Thus, because Great Lakes never received a property insurance claim from a "policy holder,” the ninety-day time limitation in section 627.7013l(5)(a) could not have been triggered.